Verna E. DAVIS, Administratrix of the Estate of Robert F. Davis, Deceased, Appellant,

v.

ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Respondent.

No. 45149.

Supreme Court of Missouri.

Division No. 1.

June 11, 1956.

Motion to Modify Opinion and Motion for Rehearing Denied July 9, 1956.

B. Sherman Landau, St. Louis, for appellant.

Norris H. Allen and Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Robert F. Davis was instantly killed when an automobile operated by him struck the side of defendant's freight train at the crossing of defendant's railroad over Illinois State Highway No. 159, near the City of Edwardsville in the State of Illinois. Plaintiff, Verna E. Davis, as administratrix of the estate of her deceased husband, sued to recover the sum of $20,000 for his wrongful death, alleging due care on the part of decedent and the negligent failure of defendant to keep flasher light signals maintained by it at said crossing in working condition as the proximate cause of the fatality. Trial of that issue and defendant's plea that the death of plaintiff's decedent was caused in whole or in part by his negligence in failing to maintain a lookout for the presence of the train upon the crossing resulted in a verdict and judgment for defendant. Plaintiff has appealed, alleging error: (1) in the giving of defendant's instruction on contributory negligence; (2) in the refusal of plaintiff's Instruction "A", purporting to declare the legal effect of the non-operation of the aforesaid signalling devices; (3) in the refusal of evidence, proffered by her in rebuttal, that the flasher lights failed to operate on occasions other than the time of the fatality; and (4) in the admission of evidence proffered by defendant. Defendant denies the validity of any of plaintiff's assignments of error and asserts that in any event the appeal must fail because the evidence shows as a matter of law that plaintiff's decedent was not in the exercise of ordinary care for his own safety.

Illinois State Highway No. 159 consists of a two-lane concrete pavement extending in a general north-south direction. It intersects at an approximate right angle defendant's east-west single line of railroad at a point nine-tenths of a mile south of the City of Edwardsville. South of the railroad tracks, the highway is practically straight and level for a distance of 500 to 1000 feet. North of the tracks, it is straight for a distance of about 50 feet and there curves westward. The tracks over the crossing are about two feet higher than what would be the normal grade of the highway on either side. This condition is accommodated by a gradual and barely perceptible incline in the grade and pavement of the highway beginning 50 to 75 feet on either side of the tracks.

Pursuant to an order of the Illinois Commerce Commission made in 1935, defendant installed and since 1936 has maintained flasher light signals on both sides of the crossing, the signal on the north side being immediately west of the pavement and the signal on the south side immediately east of the pavement. Each signal consists of two red lights directed northward and two red lights directed southward along the course of the highway. Each of these lights is equipped with a shade directing its beam toward traffic proceeding along the highway. There is also a white "bull's-eye" light in each signal directed along the railroad tracks, so that the operators of approaching trains may observe whether it is in operation. The signals are designed to operate by the alternate flashing of each of the red lights on each of the pairs when a train approaches within 800 or 1,000 feet of the crossing and to continue to flash until the train has completely cleared the crossing. A general order of the Commerce Commission requires defendant to keep these signals operative for a full period of 24 hours each day.

Decedent and plaintiff, with their two children, had resided for several years in the City of Edwardsville. Decedent was employed as a truck driver (working exclusively in Illinois) by Stahly Cartage Company in East St. Louis. In going to and from his place of employment in East St. Louis and his home in Edwardsville, decedent regularly drove his own automobile over the highway and crossing here involved. His hours of employment were irregular and he often came home at one

or two o'clock in the morning and was thoroughly familiar with the crossing and the operation of the flasher lights there maintained.

On the early morning (1:13 a. m.) of July 19, 1954, a clear, dark night, defendant's regularly scheduled (and on time) freight train, consisting of two diesel engines pulling 32 loaded and 5 empty freight cars, with an over-all length of more than 1800 feet, traveling westward, was run upon this crossing at a speed of 10 to 15 miles per hour so that it could be stopped at a switch located about 500 feet west of the crossing, where a brakeman, after the train had stopped, would throw a switch permitting the train to change to and proceed on a northbound track. In this operation the front end of the train overran the switch a distance of 50 or 60 feet before coming to a stop. This placed the eleventh car from the front of the train on the crossing and the remainder of the train (26 cars) to the east of the crossing. The train had remained in this stopped position for approximately one and one-half minutes, the time required for the brakes to release, before the engineer began to back it up at a rate of two or three miles per hour. It had moved backward 12 to 30 feet when decedent's automobile, headed northward on Highway 159, ran violently into the boxcar obstructing the crossing. The speed of the automobile forced its front end under the boxcar and tore loose the braking equipment affixed to the boxcar, which caused an automatic application of the train's emergency brakes, stopping it within a few feet. The engine of the automobile was torn loose and came to rest beneath the train. A wheel was detached from the automobile, caught on fire, and rolled out onto the highway north of the train. The decedent was thrown from the automobile and a part of it came to rest upon him. The automobile was so broken and torn apart that when the parts were assembled they constituted a pile of junk.

In his opening statement to the jury, counsel for plaintiff said, "These signals, as the evidence will show, were intermittently going out of order. They were out of order as far as a couple of years before this. They were out of order as close—", at which point counsel for defendant interposed an objection, to which the court responded, " * * * that would be too remote, but if you have evidence that it was off and on and continuously up until the time of the accident, it might go as notice to the company. On that theory, it will be admissible, but if it is just the one instance, the two years, the objection will be sustained."

Two motorists, William Mayfield and James Bruce, testified in behalf of plaintiff: Immediately prior to the collision, while en route to their homes in Paducah, Kentucky, they were traveling southward toward the crossing on Highway 159 in the rear of a southbound automobile. Shortly before reaching the crossing, the automobile in front of them made a left turn. These witnesses then for the first time saw the boxcars on the crossing. No flasher lights were in operation at the crossing. There was a noise and a flash under the boxcar on the crossing and a burning wheel of an automobile rolled out from under the train to the north side of the highway. These witnesses parked their car, crawled through the train and viewed the wreckage and the body of decedent. The flasher lights still were not working. However, at that time the train moved, which, in turn, moved the automobile, and the flasher lights "started working". About 25 minutes after the wreck, a deputy sheriff arrived. These witnesses gave him their names and addresses and resumed their journey.

Defendant's evidence was that the flasher lights were in full and continuous operation from the time the train approached within 800 or 1,000 feet of the crossing until it was removed several hours after the collision. This evidence was adduced through the oral testimony of the trainmen and the depositions of two motorists, Robert H. Bailey and Carl G. Ham, en route to Scott Air Force Base, in Illinois, who had approached and stopped their automobile on the north side of the blocked crossing immediately before the collision. The deputy sheriff also testified that the signals were

operating when he arrived. (Plaintiff, for the reasons hereinafter stated and considered, objected to the admission of the depositions of Bailey and Ham.)

Ray Sheppard, signal and communications maintainer for defendant, testified in behalf of defendant on direct examination: The flasher lights at this crossing work on an alternating current that comes in on a wire and, in the event that power fails, they are operated by storage batteries, which are charged from a trickling current. These batteries will maintain all of the flasher lighting required of all of the trains passing over the crossing in question for about two weeks; and, ordinarily, the electric system, if it has become inoperative, is restored to operation within less time than that. The storage batteries can also be charged by a device built into the unit of which they are a part. When a train approaches within 800 or 1,000 feet of the crossing, it reaches an "insulated rail joint". The distance of 800 to 1,000 feet is fixed to meet the requirements of a "standard State rule" to allow an interim of 20 seconds for the approach of the fastest scheduled train after the lights begin to operate. There is also a third system, "a circuit directly across the road". It is so wired that if "something goes wrong" a relay "makes contact to light the lights and to start the flasher relay". Any metal connecting the tracks within the 800–1,000 feet area will set the flashers to working, as will the wheels and axle (made in one piece) of a boxcar; the more wheels and axles there are that cross the tracks within the area, the more connections there are. The metal parts of an automobile across the track would not lessen any functioning of the lights.

Charles P. Bobe, a duly qualified expert, testified in behalf of defendant that the circuit is known as a "supervised closed circuit", which means that if any difficulty should develop on the circuit the lights will flash on and stay on.

In rebuttal, plaintiff offered to prove:

(1) By Harold Meikamp that five or six weeks prior to the collision he and his wife, traveling in his automobile on Highway 159, approached the crossing at about 8:45 p. m., when it was dark, at a speed of 45 to 50 miles per hour and were watching for the signals thereat, with which he was familiar; that when they reached a point 100 feet from the crossing the flasher lights started blinking and within not more than two seconds thereafter a train came onto the crossing. Defendant's objection, on grounds of immateriality, remoteness and improper rebuttal, was sustained.

(2) By Roy Ohm that he was familiar with Highway 159 and the crossing here involved; that on October 2, 1954, two weeks after the collision, he was traveling alone in his automobile south from Edwardsville during the daytime and that as he came within a short distance of the crossing he observed a train pass over it and the flasher lights were not burning "in any manner whatever". Defendant's objection, on grounds of immateriality and improper rebuttal, was sustained.

(3) By another witness that in February, 1955, the signal lights at the crossing were flashing when there was no train within one-half mile of either side of the crossing. An objection was sustained.

■ If, as defendant contends, plaintiff's decedent was as a matter of law guilty of negligence contributing to his injuries, then no submissible case was made and the judgment would be affirmed regardless of trial errors. We therefore give first attention to that issue and in so doing we bear in mind that the substantive rights of the parties must be determined by the law of Illinois.

Defendant relies strongly upon the case of Graham v. Illinois Terminal R. Co., Mo. App., 260 S.W.2d 846, wherein the St. Louis Court of Appeals considered the law of Illinois as to the duty of a motorist to look before entering upon a railroad crossing. In that case plaintiff's evidence was that *on a clear day* and with an unobstructed view of at least 100 feet of a streetcar track south of the crossing, he stopped his eastbound automobile 50 to 55 feet west of the crossing and looked south but did not

lean forward in his automobile to lengthen his range of view and, without looking south again, drove upon the track and was struck by a northbound streetcar. The evidence further showed that a few feet west of the track there was a "blinker sign" designed to flash a red light upon the approach of a streetcar. When asked if the sign was working, plaintiff said he looked at it, and "as far as [he] observed, it was not operating". The St. Louis Court of Appeals held that under the law of Illinois plaintiff's failure to look after entering a zone of unobstructed vision constituted contributory negligence unless his failure to look was excused by non-operation of the "blinker-light". The opinion then considered the case of Grubb v. Illinois Terminal Co., 366 Ill. 330, 8 N.E.2d 934, 937 (decided in 1937), which involved the alleged non-operation of "flasher lights *in the daytime*". In that case the Supreme Court of Illinois stated: "We believe the sound rule to be that although the fact that a signal system is not operating is an indication to the traveler that it is safe to cross, nevertheless he is not thereby released of the duty of using reasonable care for his own safety. Where the surroundings at a particular crossing give to the traveler an unobstructed view of a dangerous highway crossing, he is not justified in failing to look, or on looking, failing to see an approaching train, merely acting in reliance upon an assumption that no train is approaching. The law will not tolerate the absurdity of permitting one to testify that he looked and did not see, when, had he properly exercised his sight, he would have seen."

It is worthy of note, however, that the St. Louis Court of Appeals, after holding plaintiff in the Graham case, supra, guilty of contributory negligence under the law of Illinois as declared in the Grubb case, felt impelled to comment, 260 S.W.2d loc. cit. 854: "Occasions may, and often do, arise where the use of the sense of sight and that of hearing are unavailing, or where their nonuse may be excused. It may appear in a particular case that the view of the driver of an automobile is obstructed by intervening objects, or *impaired*

*by the darkness of the night."* (Emphasis ours.)

In the case of Langston v. Chicago & N. W. Ry. Co., 330 Ill.App. 260, 70 N.E.2d 852, 861, (decided in 1946), in which the motorist ran into the side of a freight train at a public railroad crossing *at night,* the Appellate Court of Illinois again considered the case law of Illinois on the subject matter of non-operating safety devices at railroad crossings, including the Grubb case, supra, and the case of Humbert v. Lowden, 385 Ill. 437, 53 N.E.2d 418 (decided in 1944), from which latter case it approvingly quoted: " 'Here, for the protection of the public, appellees had erected and maintained crossing gates. If the gates were not lowered this amounted to an invitation to travelers on the highway. It was an assurance, to them, that they could cross over the railroad tracks in safety. * * * [A]nticipation of negligence on the part of others is not a duty which the law imposes on travelers upon the highway. They have the right to presume that trains will be operated in a proper and skillful manner and that the crossing gates, installed for that purpose, will be operated, so as to prevent them from going on a crossing in front of an approaching train.' " Following similar quotations from other cases, the court further said, 70 N.E.2d 852, 861: "While in Humbert v. Lowden, supra, the train was approaching the crossing, the duty of the railroad company not to lure a traveler on to a crossing on which a train is standing or passing, is, as we have seen, the same as it is in the case of an approaching train, and of course what is said as to crossing gates applies to warning lights." The Court then held that the motorist was not guilty of contributory negligence as a matter of law. The Supreme Court of Illinois approved that decision, 398 Ill. 248, 75 N.E.2d 363, 366, saying: "The appellant claims as a matter of law that the railroad company does not owe the traveling public a duty under the law to give warning of a train upon the crossing. We think this may, as a general principle, be admitted to be true but that it does not apply to the present situation. * * * The evidence

discloses a case where there was an invitation to cross, with an implied assurance of safety. This is quite different from the ordinary case where the train is, in itself, warning and no invitation is made by the railroad company."

To the same effect is the even more recent (1951) case of Smith v. Illinois Central R. Co., 343 Ill.App. 593, 99 N.E.2d 717, 722.

 These cases are in accord with the law of other states, including the following Missouri cases: Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64, 68; Mullis v. Thompson, 358 Mo. 230, 213 S.W.2d 941, 944; Grace v. Smith, Mo.Sup., 277 S.W.2d 503, 509. We hold that plaintiff's decedent was not guilty of contributory negligence as a matter of law.

Defendant's given Instruction No. 3, of which plaintiff complains, declared, in the first paragraph thereof, that if plaintiff's decedent was familiar with the crossing, then he "had a duty to exercise ordinary care for his own safety *and had a duty to look as he approached said railroad crossing*". The second paragraph thereof declared that if the train was plainly visible "to a person exercising ordinary care for his own safety and maintaining a lookout, and * * * that the deceased failed to exercise ordinary care to maintain a lookout and negligently failed to see the defendant's train * * * and if * * * had he been in the exercise of ordinary care for his own safety in the operation of his automobile he would have seen said train and had sufficient time and space thereafter to have safely stopped his said automobile before running into * * * said train, and * * * that as a result of such failure, if any, the deceased drove his automobile into the side * * * of defendant's train * * *, then the deceased was guilty of negligence and plaintiff cannot recover, even though you find and believe from the evidence that the automatic flasher signals * * * were not working * * *."

Plaintiff says that under the law of Illinois it was error to unqualifiedly instruct the jury that her decedent "had a duty to look as he approached said railroad crossing". And, in the same connection, plaintiff complains of the refusal of her proffered instruction "A", which hypothesized a finding that decedent was in the exercise of due care and that the lights were not working, "and that the defendant was negligent in failing to keep said signals in operating condition, then the non-operation of said signals constituted an invitation to said Robert F. Davis to pass over said crossing, and an assurance to him that he could cross over the railroad track in safety;" and that if the jury further found "that as a direct and proximate result of the non-operation of said flashing light signals said Robert F. Davis collided with the defendant's freight train and was directly thereby caused to sustain injuries which resulted in his death," then plaintiff was entitled to recover.

Some of the Illinois cases, on their face, lend support to plaintiff's contention. In the above cited case of Humbert v. Lowden, 385 Ill. 437, 53 N.E.2d 418, 421, the court declared: "Whether the testimony tending to show that the gates were not lowered, or the crossing bell sounded, considering the admitted high rate of speed of the train, was sufficient to excuse the deceased from the duty to look, was, under the particular facts of this case, a question for the jury."

In the case of Smith v. Illinois Cent. R. Co., 343 Ill.App. 593, 99 N.E.2d 717, 722–723 (decided in 1951), the court said: "The general rule is that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. * * * But a traveler on the highway who is approaching or traversing a railroad crossing has not the absolute duty to look or to see an approaching train. * * * Where there is evidence excusing the failure to look, the question of plaintiff's imprudence is for the jury. * * * The rule is established that a traveler on the highway has a right to rely upon open gates, where there is a knowledge of the custom of closing the gates for passing trains, as notice that no train is near and as an invi-

tation to make a safe crossing." The court, 99 N.E.2d loc. cit. 725, then declared: "Refused instruction No. 7 stated that a person about to cross railroad tracks was bound to reasonably use his sight and hearing to discover and guard against danger. This is not the law. There is no absolute duty requiring the use of faculties to discover and guard against danger."

But, after a study of many cases from Illinois and elsewhere, we are unwilling to say that the failure of the flasher lights to operate would relieve decedent of all duty to look ahead of him as he approached and went upon the crossing. We think there can be no question that as plaintiff's decedent approached the crossing he had a duty in the exercise of due care to look and to listen for the purpose of ascertaining whether he could go upon the crossing in safety. If the signal lights were not working, that fact amounted to an assurance to him that he could go upon it in safety, which assurance, however, would not relieve him of all duty thereafter to use his senses but would require him to look and listen only with the vigilance of a motorist approaching the crossing in the exercise of due care under the same or similar circumstances. If the jury should find from the facts and circumstances in evidence that he exercised such degree of care, then he is not to be held guilty of negligence; if the jury should find he did not exercise such care, then he is to be held guilty of negligence and plaintiff is not entitled to recover. See our case of Rhineberger v. Thompson, 356 Mo. 520, 202 S.W.2d 64, 68, and cases therein cited.

Plaintiff also says that defendant's said Instruction No. 3 is erroneous because "there was no evidence as to the rate of speed at which decedent's automobile was moving, nor the time and space required to stop his automobile." The complaint cannot be sustained. The approach to the crossing was straight and practically level for more than 500 feet; decedent was thoroughly familiar with all of its physical aspects. Due care required him to approach it at a rate of speed which would enable him

to stop upon reasonable appearance of danger. The evidence is clear that if the flasher lights were operating, as defendant's evidence showed they were, then decedent was guilty of negligence as a matter of law; if they were not operating, as plaintiff's evidence tended to show, then his negligence was an issue for the jury.

Inasmuch as this case must be reversed and remanded for a new trial because of error hereinafter specified, we will not further consider defendant's given Instruction No. 3 or plaintiff's refused Instruction "A". Upon retrial, the instructions can be written so as to bring them within the evidence adduced at that trial and the law of the State of Illinois as we have herein found it to be.

We next consider plaintiff's claim of error in the refusal of her evidence proffered in rebuttal to the effect that the flasher lights did not timely operate as a train approached and came upon the crossing on an occasion five or six weeks prior to the collision and did not operate at all when a train approached and passed over the crossing on an occasion two weeks after the collision. Defendant contends such evidence was (a) not proper rebuttal and (b) not competent under the law of Missouri or Illinois, citing Grubb v. Illinois Terminal Co., 366 Ill. 330, 8 N.E.2d 934; Gignoux v. St. Louis Public Service Co., Mo.App., 180 S.W.2d 784, 787; and Wallingford v. Terminal R. R. Ass'n, 337 Mo. 1147, 88 S.W.2d 361, 366.

It is doubtful whether the proffered testimony, standing alone and uncorroborated by any other fact or circumstance, would be admissible, both because of remoteness and its slight independent probative value. See Wallingford v. Terminal R. R. Ass'n, supra. However, we are convinced that the evidence of defendant's signal and communications maintainer and its expert, Bobe, made the testimony competent and material in rebuttal. The situation was this: Plaintiff's witnesses had testified that the flasher lights were not in operation at the time decedent drove his automobile into the train. Defendant thereupon adduced evidence tending to show the well-nigh infallibility of its

signalling system at that particular crossing. The obvious and only legitimate purpose of such evidence was to discredit the testimony of plaintiff's witnesses and thereby destroy plaintiff's case, this for the reason that if the jury should find that due to the testimony tending to show practical infallibility of the signalling device the testimony of plaintiff's witnesses was not to be believed, then plaintiff had no case. Now, if plaintiff could produce evidence, as she offered to do, tending to show that the signalling devices at the crossing were not practically infallible, such testimony, if believed, would tend strongly to corroborate her said witnesses. Specific instances of the fallibility of the system would constitute the best evidence thereof; no higher grade of evidence could be available. See McGraw v. Montgomery, 239 Mo.App. 239, 185 S.W.2d 309, 319; Parker v. Bamberger, 100 Utah 361, 116 P.2d 425, 428–429; Lake Erie & W. R. Co. v. Howarth, 73 Ind.App. 454, 124 N.E. 687, 692; Texas Mexican R. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, 527; Grace v. Smith, Mo.Sup., 277 S.W.2d 503, 505–506. We hold that the court erred in excluding the aforesaid proffered testimony and that the exclusion thereof was prejudicial to plaintiff. But we are convinced and hold that the proffered testimony to the effect that the signals sometimes operated when no train was on or approaching the crossing was neither rebuttal (defendant's own witnesses testified such signals could so operate) nor material.

■ Plaintiff's contention that the admission of the depositions of defendant's witnesses Bailey and Ham was prejudicially erroneous is predicated upon defendant's answer to a pretrial interrogatory propounded to it under the provisions of Section 510.020 RSMo 1949, V.A.M.S. That interrogatory was: "With reference to the occasion referred to in plaintiff's petition, did the defendant obtain the names and addresses of any persons known to have been present at the time and place of the occurrence by being immediately found then and there by defendant's agents?" Defendant's answer was: "Defendant did not obtain the names and addresses of any witnesses known to have been present by being 'immediately' found then and there by defendant." Plaintiff contends that a brakeman, one DePoister, was an eye witness to the "occasion referred to in plaintiff's petition" and did "immediately" find Bailey and Ham and obtain their names and addresses and give them to defendant and that, therefore, Bailey and Ham were known to defendant to have been present "at the time and place of the occurrence", contrary to its answer above quoted.

The question presented is a troublesome and, for defendant, a dangerous one. DePoister was standing on the lower front of the engine when it stopped west of the crossing so that he might throw the switch. He did not see the collision but did see a "flash" and did go back to the crossing, arriving there within a minute or a minute and one-half after the flash. He there obtained the names and addresses of Bailey and Ham (as well as the names of plaintiff's witnesses Mayfield and Bruce), all of which he delivered to defendant, and which were in defendant's possession when it answered the interrogatory. The evidence does not show how quickly after DePoister arrived at the crossing he became aware of Bailey and Ham's presence. We have concluded that the evidence does not establish that Bailey and Ham were persons *known to have been present* at the time of the occurrence *by being immediately found then and there* by DePoister. The crossing was a busy one. In ordinary course many persons could arrive within moments after the collision. DePoister could not have known with certainty that Bailey and Ham were actually present when or before the collision occurred and, therefore, neither could defendant have such knowledge. Consequently defendant's knowledge of their presence at the "occurrence" was based upon hearsay. See State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907. The assignment is overruled.

■ Finally, plaintiff complains of error in the admission of evidence of the marital status of several of defendant's witnesses and the admission of photographs

showing the assembled pieces of decedent's automobile, which were taken after the pieces were removed from the place of the wreck. Plaintiff has failed to point out wherein or why such evidence, if incompetent, was prejudicial and, upon careful scrutiny of the record, we have been unable to see any prejudicial effect incident to its admission. In the absence of prejudice resulting from the admission of evidence which would materially affect the merits, we cannot reverse. Section 512.160(2) RSMo 1949, V.A.M.S.

For the error in refusing to admit plaintiff's evidence, proffered in rebuttal, that the flasher lights were not operating at the times mentioned in the proffer, the judgment is reversed and the cause remanded.

All concur.