Verna E. DAVIS, Administratrix of the Estate of Robert F. Davis, Deceased, Appellant,

v.

ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Respondent.

No. 47172.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

**80**

————◆————

Sherman Landau, St. Louis, for appellant.

Norris H. Allen, William B. Anderson, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for respondent.

HOLMAN, Commissioner.

At about 1:15 a. m. on September 19, 1954, Robert F. Davis was instantly killed when the automobile he was driving ran into one of the cars of defendant's freight train at the railroad crossing maintained by defendant over Illinois State Highway No. 159 about a mile south of Edwardsville, Illinois. This action was instituted shortly thereafter by plaintiff as administratrix of the estate of her deceased husband seeking to recover the sum of $20,000 for his wrongful death. The case has been tried three times in the circuit court and this is the third appeal to this court. The first trial resulted in a verdict and judgment for defendant which was reversed upon plaintiff's appeal and the cause was remanded for a new trial. See Davis v. Illinois Terminal Railroad Co., Mo.Sup., 291 S.W. 2d 891. The second trial resulted in a verdict for plaintiff in the sum of $20,000. Upon appeal by defendant the judgment entered thereon was reversed and

the cause remanded because of error in the exclusion of certain evidence. See Davis v. Illinois Terminal Railroad Co., Mo.Sup., 307 S.W.2d 395. At the termination of the instant trial the jury returned a verdict for defendant and plaintiff has duly appealed from the ensuing judgment.

At each trial plaintiff has contended that the automatic flashing signal lights maintained by defendant at said crossing were not operating at the time of the collision and that defendant's negligence in failing to keep said signals in operating condition was the proximate cause of the collision between decedent's automobile and the train, which directly resulted in the death of decedent. Defendant has contended at each trial that plaintiff has failed to prove decedent's exercise of due care, as required by the law of Illinois, and that the evidence has shown that decedent was guilty of contributory negligence as a matter of law.

The evidence at the third trial, with the exceptions hereinafter noted, was substantially the same as that offered in the two previous trials. We make reference to the opinion upon the first appeal (291 S. W.2d 891) for a detailed recital of the evidence. We will give a brief summary of the evidence which has been presented at each trial and will state in greater detail certain evidence presented for the first time at the instant trial.

At the intersection in question Illinois State Highway No. 159 runs generally north and south and is intersected by defendant's east-west line of railroad tracks. The decedent lived in Edwardsville but was employed in East St. Louis, Illinois, as a truck driver. His hours of work were irregular and he often returned from work during the early hours of the morning. On the occasion in question he was approaching the intersection from the south. The highway is practically straight and level for a distance of 1,000 feet south of the railroad track. North of the tracks it curves westwardly. There is a gradual

incline in the grade of the highway beginning about 75 feet on either side of the tracks so that the tracks at the crossing are about two feet higher than the normal level of the highway on each side.

The evidence tended to show that pursuant to an order of the Illinois Commerce Commission, defendant has been required, since 1936, to maintain flasher lights in good working order at said crossing during all hours of the day and night. Those signals were designed to flash red warning lights in each direction when a train approached to within 800 or 1,000 feet of the crossing, and to continue to flash said warning until the train had completely cleared the crossing.

Upon the occasion in question defendant's westbound train consisted of two diesel engines pulling 37 freight cars. The train was required to stop about 500 feet west of the crossing where a brakeman would throw a switch which would permit the train to go onto a northbound track. On the night in question the train overran the switch by 50 or 60 feet before coming to a stop. After waiting a minute or so, the engineer began to back up at a rate of two or three miles per hour, at which time decedent's automobile ran violently into a boxcar on the crossing. It is evident that the speed of the car caused its front portion (including the engine) to be forced under the boxcar and to damage certain of the brake equipment of the train which caused the automatic application of the emergency brakes and stopped the train within a short distance.

There was evidence to indicate that there were two automobiles on the north side of the crossing which were waiting to cross as soon as the train cleared the crossing. The two occupants of one of the automobiles testified as witnesses for the plaintiff that the flasher lights were not in operation prior to the time decedent's automobile struck the boxcar. Their testimony indicated that the flasher lights did not begin to operate until the train crew

moved the train in an effort to open the crossing a few minutes after the casualty. The two occupants of the other car were airmen stationed at Scott Field, Illinois. They each testified for defendant that the red warning lights were flashing when they approached the crossing from the north; that after decedent's automobile struck the train they crawled through the train and saw that the flasher was working on the other side. One of these witnesses had had first-aid training and immediately checked the pulse of decedent and found that he was dead.

Defendant also presented the testimony of four members of the train crew, each of whom testified that the flasher signals were operating prior to the time the train went upon the crossing and were in continuous operation from that time until long after the decedent's car struck the train. Defendant also offered the testimony of Ray Sheppard, its signal maintainer, who arrived at the scene of the casualty about an hour and a half or two hours following the casualty. He stated that at the time he arrived a part of the train was still near the crossing and that the flasher lights were then in operation. He stated further that he had been notified of the collision and that it was his duty, upon the happening of such occurrences, to make an inspection of the signals in order to determine whether or not there was anything wrong with them; that he made such an inspection on this occasion and found that all of the relay systems were operating properly. In that connection it should perhaps be stated that plaintiff offered an electrical engineer as an expert witness who testified that he had examined the lights in question and had studied a diagram of the circuits involved, and, in answer to a hypothetical question, expressed an opinion concerning a number of contingencies that could have occurred which would have accounted for the failure of the lights to operate at the time of the instant casualty. He expressed the further opinion that when the train was moved

following the collision, the resulting vibration might have caused the lights to then begin functioning in the manner as testified to by certain of plaintiff's witnesses.

The evidence disclosed that approximately 500 feet south of the crossing there was a state highway department sign which indicated a speed limit of 45 miles per hour. The defendant offered expert testimony to the effect that at 45 miles per hour the driver of a 1953 Ford automobile should be able to stop in not more than 154 feet, including reaction time; that at 60 miles per hour, the driver should be able to stop in 270 feet.

There was certain evidence at the instant trial concerning observations and photographs which was not offered at the two previous trials. A short time before the trial counsel for defendant sought to reproduce, as nearly as possible, the exact situation which confronted decedent on the night of the casualty and to take pictures showing what could be observed at certain distances under those circumstances. They obtained a 1953 Ford automobile similar to the one decedent was driving, had the headlights checked and properly focused by a mechanic, and arranged for the train to stop upon the crossing in question at about 1:30 a. m. on a clear but dark night. Railroad workmen placed their coats over the automatic warning signal and the automobile was first placed at a point 202 feet south of the crossing and pictures were taken by a professional photographer with the lights of the car on low beam, and also with the lights on high beam, to disclose the visibility of the box-car at that distance and under those circumstances. The car was then placed at a point 107 feet south of the crossing and similar pictures were taken. In detailing the facts surrounding the taking of the pictures, the photographer and other witnesses testified that the pictures were a fair representation of what they actually saw there on that occasion. The pictures that were admitted in evidence and the testimony in connection therewith indicate that the box-car was rather plainly visible at both distances when the headlights were on either the low or high beam. Other evidence will be detailed in connection with the consideration of points which have been briefed upon this appeal.

Before considering the specific points briefed by plaintiff in regard to alleged trial errors we should perhaps mention the contention of the defendant that the judgment should be affirmed because plaintiff failed to make a submissible case, i. e., failed to prove the exercise of due care by decedent and that, as a matter of law, deceased was shown to be guilty of contributory negligence. We will not rule that contention. Since we have concluded that plaintiff is not entitled to a new trial upon any of the grounds assigned in her brief it is unnecessary for us to decide the foregoing contention as the result of this appeal would, in any event, be the same.

The first point briefed by plaintiff is that the court erred in rejecting evidence offered by her as to the nonoperation of the flasher signal lights on occasions other than the night of the casualty in question. Offers were made by plaintiff to prove that the flasher lights did not function properly on an occasion a month before the instant fatality; on another occasion five weeks after decedent was killed; on another occasion a little more than a year after the casualty; and also on an occasion in January 1956.

In the first trial the court refused to permit proof that the flasher lights failed to operate properly on an occasion five weeks prior to the collision and at another time about two weeks after the collision. This court ruled that the exclusion of that evidence was prejudicial error for the reason appearing in the following (291 S.W. 2d 898, 899): "It is doubtful whether the proffered testimony, standing alone and uncorroborated by any other fact or circumstance, would be admissible, both because of remoteness and its slight inde-

pendent probative value. See Wallingford v. Terminal R. R. Ass'n, supra [337 Mo. 1147, 88 S.W.2d 361]. However, we are convinced that the evidence of defendant's signal and communications maintainer and its expert, Bobe, made the testimony competent and material in rebuttal. The situation was this: Plaintiff's witnesses had testified that the flasher lights were not in operation at the time decedent drove his automobile into the train. Defendant thereupon adduced evidence tending to show the well-nigh infallibility of its signalling system at that particular crossing. The obvious and only legitimate purpose of such evidence was to discredit the testimony of plaintiff's witnesses and thereby destroy plaintiff's case, this for the reason that if the jury should find that due to the testimony tending to show practical infallibility of the signalling device the testimony of plaintiff's witnesses was not to be believed, then plaintiff had no case. Now, if plaintiff could produce evidence, as she offered to do, tending to show that the signalling devices at the crossing were not practically infallible, such testimony, if believed, would tend strongly to corroborate her said witnesses. Specific instances of the fallibility of the system would constitute the best evidence thereof; no higher grade of evidence could be available."

■ At the beginning of the trial under review defendant's counsel indicated to the court that defendant would not offer evidence tending to prove that the signal system at this crossing was infallible and hence would object to any evidence that might be offered as to the nonoperation of the flashers on other occasions. However, upon this appeal, plaintiff contends that, notwithstanding his announcement, defendant's counsel did produce evidence of the usual performance of the flasher signals at times other than at the particular time of this collision, and, therefore, under our quoted ruling, plaintiff was entitled to prove nonoperation on other occasions. We do not agree. Of course, all of the witnesses that were at the scene testified that the

lights were flashing during the period from a short time after the collision until the railroad cars were removed from the area two hours or more thereafter. Defendant's signal maintainer testified that he examined the system two hours after the collision and that it was operating properly. Defendant's counsel also interrogated various members of the train crew as to the manner in which this signal system worked. For example, they testified that when a train reached a point about 800 feet from the crossing the flasher signals would start operating. However, we do not think that such testimony could reasonably be considered as an attempt to prove that the signals always started to operate under those conditions or that they so operated on any particular occasion.

We must also consider whether the proffered testimony would be admissible (without regard to evidence offered by defendant) as substantial evidence tending to prove that the signals were not operating at the time of the collision. In our first opinion we expressed the view that it was doubtful that such evidence would be admissible for that purpose. We have considered the matter further and now hold that the instant proffered testimony was (in each instance) so remote and so lacking in probative value as to render it inadmissible. Wallingford v. Terminal R. R. Ass'n, supra. We have carefully considered the cases cited by plaintiff in support of her contention that the evidence should have been admitted. They are: McGraw v. Montgomery, 239 Mo.App. 239, 185 S.W.2d 309; Grace v. Smith, 365 Mo. 147, 277 S.W.2d 503; Metcalf v. Central Vermont Ry. Co., 78 Conn. 614, 63 A. 633; Texas and New Orleans R. Co. v. Pettit, Tex.Civ.App., 290 S.W.2d 730; Parker v. Bamberger, 100 Utah 361, 116 P.2d 425; Lake Erie & W. R. Co. v. Howarth, 73 Ind.App. 454, 124 N.E. 687, 127 N.E. 804; Texas Mexican R. Co. v. Bunn, Tex.Civ. App., 264 S.W.2d 518. In the Grace, Pettit and Bunn cases the question of the admissibility of testimony as to the non-

performance of the signal on other occasions was not considered. In the McGraw and Metcalf cases the admission of the evidence was held not to be error because of evidence that had been offered by the defendants. The Parker and Lake Erie cases tend to support plaintiff's contention but we do not find those cases convincing, at least when considered in connection with the precise factual situation here involved.

Plaintiff's next contention is that the court erred in giving defendant's Instruction No. 10 which submitted the issue as to decedent's contributory negligence, and in refusing plaintiff's Instruction A upon the same issue. Plaintiff states in her brief that "Instruction No. 10 was erroneous under the controlling law of Illinois in that it charged decedent with the inflexible duty to look and listen as he approached the crossing in issue, whereas such duty, under the Illinois law, was qualified and relaxed by the circumstances that decedent was entitled to place a measure of reliance upon the silent [inoperative] signals at the crossing. Instruction A, offered by plaintiff, would have properly instructed the jury upon the legal effect of the nonoperation of the signal lights." We think these contentions are controlled by our decision upon the first appeal in this case. We will not extend this opinion by setting out the contents of Instruction No. 10. Although the wording is different it presents the same question as was determined by this court in connection with a similar contention in regard to defendant's Instruction No. 3 given at the first trial. Refused Instruction A is, for practical purposes, an exact copy of refused Instruction A which we considered upon the first appeal.

◼ In ruling, upon the first appeal, that the court did not err in giving defendant's Instruction No. 3 or in refusing plaintiff's Instruction A (issues similar to the instant contentions), we stated that "after a study of many cases from Illinois and elsewhere, we are unwilling to say that the failure of the flasher lights to operate would relieve decedent of all duty to look ahead of him as he approached and went upon the crossing. We think there can be no question that as plaintiff's decedent approached the crossing he had a duty in the exercise of due care to look and to listen for the purpose of ascertaining whether he could go upon the crossing in safety. If the signal lights were not working, that fact amounted to an assurance to him that he could go upon it in safety, which assurance, however, would not relieve him of all duty thereafter to use his senses but would require him to look and listen only with the vigilance of a motorist approaching the crossing in the exercise of due care under the same or similar circumstances. If the jury should find from the facts and circumstances in evidence that he exercised such degree of care, then he is not to be held guilty of negligence; if the jury should find he did not exercise such care, then he is to be held guilty of negligence and plaintiff is not entitled to recover." 291 S.W.2d loc. cit. 898. We accordingly rule this point against plaintiff.

Plaintiff next complains of the rulings of the court which excluded evidence of her pleaded assignments of negligence to the effect that defendant failed to provide a watchman or signal bells at the crossing. At the trial defendant maintained that it had discharged its duty when it complied with the order of the Illinois Commerce Commission requiring it to install and maintain flasher signals and hence that evidence was not admissible to prove that it failed to provide some other type of warning. In general it may be said that the rulings of the trial court indicated that it shared that view.

◼ It is our view that under the law of Illinois the fact that a railroad company complied with the order of the commerce commission in regard to the type of warning to be provided at a crossing would not necessarily preclude a submission permitting recovery for negligence in failing to provide some additional warning. "With

reference to the adequacy of the protection afforded by the defendant railroad at this crossing, both the Illinois and Federal Courts have recognized that, irrespective of statutory requirements, there is a common law duty devolving upon a railroad to exercise such precautions as will enable travelers to ascertain the approach of a train. Wagner v. Toledo, P. & W. R. R., 352 Ill. 85, 90, 185 N.E. 236; Grand Trunk R. Co. of Canada v. Ives, 144 U.S. 408, 12 S.Ct. 679, 684, 36 L.Ed. 485. The amount of protection required is dependent upon the circumstances existing at a particular crossing, and a jury will be warranted in finding, even in the absence of any statutory direction, that a railroad company should keep a flagman or gates at a crossing where such crossing is more than ordinarily hazardous." Applegate v. Chicago & N. W. Ry. Co., 334 Ill.App. 141, 78 N.E.2d 793, 798. However, "Before plaintiff would be entitled to recover on the charge that defendant did not have a watchman * * * at the crossing, it was incumbent upon him to plead and prove that the crossing was by reason of some conditions or circumstances more dangerous than the ordinary crossing and that it caused unusual peril to persons crossing it." Willett v. Baltimore & O. S. W. R. Co., 284 Ill.App. 307, 1 N.E.2d 748, 751.

In the instant case plaintiff alleged that the crossing was made extrahazardous because defendant "conducted switching operations on and over the aforesaid highway in the darkness of the nighttime hours." The only proof of switching operations over the crossing in question is the testimony that the train involved in the collision had to be stopped on the crossing long enough for a switch to be thrown so that it could enter the track which leads to East Peoria, Illinois.

■■ It should be noted that plaintiff was permitted to prove, without objection, that no automatic bells were maintained at the crossing and yet she offered no instruction which would have submitted to the jury the issue of defendant's negligence in failing to maintain bells. In those circumstances no reversible error was committed when the court, on another occasion, sustained an objection and struck out testimony which indicated that no bells were maintained at the crossing. On the issue of defendant's failure to keep a watchman at that crossing we observe that plaintiff has not pointed to a single instance in which she offered to prove that no watchman was maintained at the crossing. It might reasonably be said that defendant tacitly conceded that there was no such watchman. However, plaintiff did not take that position at the trial nor offer an instruction submitting the issue of defendant's negligence in failing to keep a watchman at the crossing to warn persons traveling on the highway. In that situation there is nothing for us to review on that issue and we need not determine whether there was sufficient proof of the extrahazardous nature of the crossing as would have warranted the submission of the issue of defendant's negligence in failing to provide a watchman (in addition to the flasher signals) at the crossing.

■ Plaintiff offered to prove by the testimony of Harold Meikamp "that there was a general practice and custom of motorists in traveling over Highway 159 to drive with their headlights depressed because of the volume of traffic passing over that highway." The court sustained an objection to the proffered testimony and that ruling is now said to have been error which was "gravely prejudicial" to plaintiff. There was no evidence as to whether the headlights on decedent's car were on high or low beam at the time of the collision and it is likely that no evidence relating to that fact could be obtained. It is plaintiff's theory that evidence that said headlights were on low beam would tend to prove that decedent had not been guilty of contributory negligence, because, in that event, the cars of the train would not have become visible to decedent as soon as they would if the lights had been on the high

beam. Decedent traveled over Highway 159 regularly and hence plaintiff argues that the jury could reasonably have found that he was familiar with any custom that may have existed with reference to motorists using said highway. It is further said that proof of the custom as proffered would tend to prove that decedent was driving with the headlights of his car on low beam upon the occasion in question.

■ No case is cited which bears directly upon the question presented and we have found none. It is a matter of common knowledge that motorists from many parts of the United States frequently use the principal highways of the various states. In that situation it is difficult to understand how a custom could exist as to a practice followed by motorists upon a certain highway unless that practice was followed generally by motorists everywhere. However, in any event, under the circumstances shown in this case we think the proffered evidence would have had such slight probative value that the court acted properly in excluding it.

■ In his argument to the jury defendant's counsel stated: "The law of this case is this: even if these lights weren't burning—and I believe they were, and I know you do, too—but even if they weren't, if we were 99% negligent and he were 1% or 1/10th of 1% negligent, the plaintiff in this case has no lawsuit. That's the law of the State of Illinois and the law of the State of Missouri." Later, during the closing argument of plaintiff's counsel the following occurred: "Mr. Landau: * * * These comments about 99% and 1% faults don't constitute the law in the case either; that's just the argument of one lawyer. And even if it were true, which it isn't— Mr. Allen: I object to that. That is the law, and Mr. Landau knows it. The Court: The court instructed on the law."

Plaintiff contends that the argument of defendant's counsel was "palpably erroneous" and that the statement of Mr. Allen at the time he objected to plaintiff's argument, "That is the law and Mr. Landau knows it," implied a purpose on the part of plaintiff's counsel to mislead the jury and was "grossly inappropriate." We observe that no objection was made by plaintiff's counsel to either of the statements complained of. Since no objection was made in the trial court the matters are not properly before us for review. Enyart v. Santa Fe Trail Transp. Co., Mo.Sup., 241 S.W. 2d 268.

■ Another contention briefed by plaintiff is that the trial court erred in failing to grant her a new trial because of newly discovered evidence. Near the close of its presentation of evidence defendant offered verbal testimony and photographs (heretofore described) which tended to show the visibility of the train at certain distances when illuminated by the headlights of a 1953 Ford automobile. In support of her motion for new trial plaintiff attached the affidavit of her attorney in which he stated that he had no prior notice or knowledge that defendant intended to offer the instant evidence and hence had no opportunity to investigate the subject of nighttime photography; that after the trial he learned from experienced photographers that "there is no means known to the photographic art for reproducing by photographic processes, with reasonable accuracy, the degree of visibility apparent to the human eye from artificial illumination." Also attached was the affidavit of a professional photographer who stated that "photographic film registers the rays of light reflected from the object being photographed, but, unlike the process in the human eye, those rays become cumulative on photographic film and build up to degrees of light intensity which vary on the photographic film in direct proportion to the length of exposure."

"We recognize the general rule of law to be that the granting of a new trial upon the ground of newly discovered evidence is not favored, Devine v. Wells, 300 Mo. 177, 254 S.W. 65, that it rests within the

sound discretion of the trial court, Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748, that before it should be granted, failure to procure it at the trial must not be because of lack of diligence, Mayor of Town of Liberty v. Burns, 114 Mo. 426, 19 S.W. 1107, that it should be evidence that is not merely cumulative or impeaching, Wabash R. Co. v. Mirrielees, 182 Mo. 126, 81 S.W. 437; Perkins v. Silverman, 284 Mo. 238, 223 S.W. 895, that it must be material evidence and that it must be of such character as would probably produce a different result on a new trial. Citizens Bank of Senath v. Johnson, Mo. App., 112 S.W.2d 916, 917." Hayes v. Adams, 241 Mo.App. 560, 244 S.W.2d 123, 127. We have concluded that the trial court did not abuse its discretion in refusing a new trial upon the ground of newly discovered evidence. It is apparent that the sole purpose of the proposed evidence would be to diminish the weight that might be given to defendant's photographs and hence it would fall in the category of impeaching evidence. Moreover, since two witnesses testified that the photographs were accurate reproductions of what they saw there at the time the photographs were taken, we are of the opinion that the evidence plaintiff desires to offer would not likely produce a different result in the event of a new trial.

The final assignment in plaintiff's brief is stated therein as follows: "Defendant's counsel improperly addressed arguments to the jury in the guise of making objections to the court, despite the court's repeated admonitions, and improperly testified for the witnesses continuously throughout the trial, despite the rulings of the trial court, through use of a 'did you or did you not' technique and other similar devices." In support of that assignment plaintiff has detailed a number of instances in her argument about which she complains. We have carefully considered each instance specified but will not extend this already lengthy opinion by a discussion thereof. In many instances no objection was made to the matter now complained of. In almost every

instance where plaintiff did object the trial court sustained the objection and granted the relief requested. We deem it sufficient to say that we find nothing specified under this point which would constitute reversible error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.