**ROMPADINE, INC., a corporation, Respondent,**

v.

**EXECUTIVE INTERNATIONAL INN, INC., a corporation, Appellant.**

No. 37976.

Missouri Court of Appeals, St. Louis District, Division Four.

Aug. 30, 1977.

Edwin Rader, Clayton, for appellant.

Leonard Komen, Susman, Schermer, Willer & Rimmel, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

In this suit to recover a $10,000 deposit as earnest money, the jury verdict was for plaintiff, and defendant has appealed. We affirm.

On August 12, 1972, the parties entered into a contract whereby plaintiff was to purchase for $217,500 certain described land in the City of Fenton upon which it proposed to construct an indoor ice skating rink. The closing date for the sale was September 13, 1972. Plaintiff alleged, and by its answer defendant admitted, that the "Contract was subject [to] and contingent upon certain conditions among which was the Plaintiff's securing necessary building permits and occupancy permits from all necessary Governmental bodies prior to closing."

The court instructed the jury that the verdict should be for plaintiff if they believed, among other things, "that plaintiff made a reasonable effort to secure such building permits and occupancy permits from all necessary Governmental bodies and agencies prior to closing" and that "plaintiff was unable to secure said permits." The defendant contends on this appeal that the court erred in submitting the above issue to the jury because it was admitted that plaintiff "failed to make formal application for the issuance of such permit by the proper governmental authority," and it argues that the proper authority was St. Louis County.

Mr. A. Strode, who was a member of the Board of Aldermen in 1972 and the Mayor of the City of Fenton at the time of trial, testified that in 1972 Mr. Robert Kling was Public Works Director, who also acted as Building Commissioner, and that he was the "sole boss" as to the granting of building permits for residential property, but that "St. Louis County issue[d] permits" for commercial property. He explained that the arrangement with St. Louis County was the result of an ordinance enacted by the City of Fenton authorizing the City to enter into a contract with the County for that purpose. Neither the ordinance nor the contract was offered in evidence. Mr. Strode also testified that even though the building permit for commercial property was issued by the County, Mr. Kling reviewed and had to approve "the set back lines to make sure they complied with zoning laws and to make sure there was ample parking placings," and after he had approved the plans "he [Mr. Kling] would then submit those [the plans] to the County." The mayor was asked: "Did you have to get approval from Mr. Kling before you could go to the second stage to get this other [County] approval?" The answer was, "Yes." It is admitted that Mr. Kling never approved the plans submitted to him, and that neither he nor plaintiff made application to St. Louis County for a commercial building permit.

Mr. Koman, president of plaintiff corporation, testified at considerable length concerning the numerous meetings he had with

Mr. Kling, some occurring before the date of the contract of sale, and that he had submitted plans and revisions of plans to Mr. Kling but never obtained his approval. Mr. Kling did not testify, and Mr. Koman was not permitted to state what was said by Mr. Kling on the ground that it was hearsay. Therefore, the objections of Mr. Kling to plaintiff's plans are not of record. However, defendant makes no contention on this appeal that the efforts of Mr. Koman to obtain the approval of Mr. Kling were not made in good faith. Defendant only contends that under the circumstances of this case, as a matter of law, plaintiff was required to make formal application to St. Louis County for the permit. We do not agree.

The evidence clearly shows that approval of Mr. Kling had to be obtained before the application could be submitted to the County. This is the factual difference between this case and *Waterway Gas 'N Wash, Inc. v. Sandbothe*, 550 S.W.2d 617 (Mo.App. 1977). In that case no prior approval had to be obtained before a request to rezone the property could be made to the agency authorized to rezone. Second, according to Mayor Strode, after the approval of Mr. Kling was obtained, he, and not plaintiff, would submit the plans to the County.

In view of the testimony of the mayor, we cannot rule, as a matter of law, that the failure of plaintiff to make application to St. Louis County for a building permit resulted in plaintiff not exerting a reasonable effort to obtain the required permits. The issue was properly submitted to the jury.

■ Defendant next asserts that the court erred in sustaining an objection to testimony offered by it to show the cost of "complying with the contractual provisions concerning the bringing of sewerage, gas, electric and water facilities" to the property because this evidence was "relevant and material to show that [it] had also expended money on the transaction and was ready, willing and able to close the deal."

Defendant argues that plaintiff showed that it had expended in excess of $10,000 on architects and engineers, and that it was "unfair" that the jury not know that defendant had also expended money, and that the action of the court in excluding its offered evidence of expenditures by it was an abuse of discretion. Plaintiff's evidence was received without objection, and it was material to show the efforts of plaintiff to obtain the required permits. However, in the event that plaintiff did not obtain the permits, after a reasonable effort to do so, there was no contractual provision imposing any obligation on defendant to expend money to bring the stated facilities to the property. The offered evidence did not tend to prove or disprove any issue in the case and was properly excluded.

■ Defendant's final contention is that the trial court erred in refusing to grant a new trial because of newly discovered evidence and the discovery that Robert Kling was available as a witness.

Defendant filed an affidavit, executed by Robert Kling on January 16, 1976, in which he stated that after he left his employment with the City of Fenton he had been to Alaska and other parts of the United States, but that he had been back in the St. Louis area "approx.mately thirty days." The trial started on January 5 and concluded on January 7. Therefore, Mr. Kling had been in the St. Louis area for over two weeks prior to the trial. There is no indication that defendant requested a subpoena for Mr. Kling.

Mr. Kling also stated in the affidavit that Mr. Koman had presented "preliminary drawings" to him; that he was concerned with the "adherence and requirements of all new and expansion projects as they related to zoning and planning ordinances of the City of Fenton;" that he met Mr. Koman at the City Hall five or six times and also had lunch and coffee with him; that he met with plaintiff's architect on one occasion; that Mr. Koman "re-submitted different plans with an increased building size which would affect parking;" that Mr. Koman "on numerous occasions continuously jockeyed and altered preliminary drawings" which made it necessary "to completely

redo the plan review," but that this "was done;" and that Mr. Koman originally submitted plans for an ice rink with bare essentials and at a later date expanded said project to include other items which were facilities to complement the ice rink.

These statements tend to demonstrate an effort on the part of Mr. Koman to obtain the approval. At least they do not indicate a failure on the part of Mr. Koman to exercise a reasonable effort to obtain approval of the plans.

In conclusion, Mr. Kling stated in his affidavit that his recollection of the "last conversation" with Mr. Koman was that he "inferred" that there was a question of whether "his partners could comply with all the zoning requirements at this particular site and resolve it into a feasible financial package," but if there had been compliance "approval would have been given by the City of Fenton for the project to proceed." We note that the mayor testified that the Board of Aldermen did not act on applications for building permits, but that as to commercial projects the permit was issued by the County.

The courts have long viewed motions for a new trial on the ground of newly discovered evidence with disfavor and grant them as an exception and refuse them as a rule. *Davis v. Illinois Terminal Company*, 326 S.W.2d 78, 86 (Mo.1959). The granting or refusing of a new trial for newly discovered evidence is a matter properly within the sound discretion of the trial court whose ruling is not to be disturbed except for clear abuse. *Koenig v. Skaggs*, 400 S.W.2d 63 (Mo.1966). In *Lynch v. Baldwin*, 117 S.W.2d 273 (Mo.1938), and also in *Gehner v. McPherson*, 430 S.W.2d 312 (Mo.App.1968), the requirements to be met before a new trial may be granted on this ground are set forth. We need not enumerate them here, but it is sufficient to state that, aside from other matters, the substance of the affidavit does not indicate the probability of a different result if a new trial were granted. Instead, it tends to support plaintiff's contention that it made a reasonable effort to obtain the approval of Mr. Kling of its

plans so the application could be presented to St. Louis County. We also note that on this appeal there is no contention that plaintiff did not exert good faith efforts to obtain the approval of Mr. Kling, the only contention is that plaintiff did not make a formal application to St. Louis County.

We can only conclude that the trial court did not abuse its discretion in overruling defendant's motion for a new trial on the ground of newly discovered evidence, or on the ground of the post-trial discovery of the availability of Mr. Kling as a witness.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.