T. E. HAYES, RESPONDENT, v. ALLEN A. ADAMS, APPELLANT.—244 SW (2) 123.

Springfield Court of Appeals.   November 27, 1951.

*Smith & Williams* and *Rogers & Rogers* for Appellant.

*Walker & Daniel* for Respondent.

VANDEVENTER, P. J.—Action in replevin. Verdict for plaintiff, defendant appeals. We will hereafter refer to the parties as plaintiff and defendant.

Plaintiff's petition alleged that he was the owner of a 1948 Chevrolet Sedan (describing it) of the value of $1900.00. That he delivered the sedan to defendant, who was a registered dealer in motor vehicles, who was to sell it and they were to divide the profits. It was further alleged that defendant failed to sell it and also failed to return it to plaintiff, although demand had been made for the return of it on or

about the 1st day of November, 1948. That the automobile had depreciated in value in the amount of $300.00 by reason of the unlawful detention and was then worth $1600.00. Judgment was prayed for the possession of said automobile and $300.00 for its detention.

Defendant's answer denied he received the automobile for the purpose of reselling it, but asserted that plaintiff had sold it to him for $1900.00, had delivered it and that he paid that amount to plaintiff for it. That at the time plaintiff delivered him the automobile, he manually delivered to him the dealer's bill of sale thereto and promised to assign and transfer said bill of sale or certificate of title to the defendant. That repeated demands had been made upon plaintiff to endorse the bill of sale to defendant but that he had refused to do so and that plaintiff had never tendered to defendant the $1900.00 paid him for the motor vehicle.

Defendant also added a counterclaim in which he admitted receiving the automobile, reasserted that he had paid plaintiff $1900.00 for it and requested judgment for the $1900.00 in the event possession of the automobile was adjudged to the plaintiff and that the judgment for $1900.00 be made a special lien thereon.

To this answer plaintiff filed a reply denying all allegations contained therein and reaffirming the allegations of his petition. The allegations in the counterclaim were also denied and it was alleged that the automobile had depreciated in value $1000.00 and prayed that plaintiff recover possession of the automobile, and judgment for $300.00 for its detention and also $1000.00 damages, and in case delivery of said automobile could not be made, prayed judgment for the sum of $1600.00.

For clarity, the evidence must be recited somewhat in detail. Plaintiff testified that in February, 1948, he was the son-in-law of defendant; that he was employed by a tobacco company as salesman and that he had an agreement with defendant, his father-in-law, who was a dealer in automobiles and located at Ava, Missouri, that if, while on this tobacco route, he discovered an automobile that he could purchase and his father-in-law resell at a profit, that he would purchase it, deliver it to his father-in-law at Ava, who would resell it and they would divide the profit. That his father-in-law would furnish him the money when necessary to make the purchases. That a great number of automobiles were bought and sold in this manner but that his father-in-law never did advance the purchase price by check but generally gave him the money in one hundred dollar bills. He stated that in February, 1948, he had the opportunity to buy a new 1948 Chevrolet Sedan from Omar French, owner of French Motor Company of Republic, Missouri; that he did purchase this automobile, gave his check, drawn on the Farmers and Merchants Bank of Springfield, Missouri, and dated February 19, 1948, in the sum of $1900.00 to the French Motor Company for the automobile; that this check cleared

through the bank and was charged to his account. The check was admitted in evidence and showed that it was endorsed by the payee, French Motor Company, deposited to its account in the Citizens Bank of Springfield and was paid by the Farmers and Merchants Bank on February 25, 1948. The bank records also show withdrawal of that amount.

Plaintiff stated that in a few days, on a weekend, after the purchase of this automobile, that he delivered it to his father-in-law at Ava, Missouri, and the father-in-law agreed to sell it for him according to the standing agreement. He stated that defendant failed to get a buyer for it and at numerous times he demanded the return of the automobile unless a purchaser was forthcoming. When these demands were made, defendant would inform him that he had a prospective customer to whom he thought he could make the sale. As to the value of the automobile plaintiff testified that he gave $1900.00 for it and that it was worth, at the time he delivered it to defendant, about ''twenty-three or twenty-three-and-a-half.'' (Presumably hundreds.)

He was asked if he had seen the automobile since delivery to defendant and stated that he had seen it about three weeks before parked in the City of Springfield and that defendant and his then ex-wife were in it; that it looked as good as new although this date was more than two years after he had delivered it to defendant. He further testified that automobiles had decreased in value from the time he purchased it until the date of the trial. This is all the evidence there was as to the value of the automobile or as to depreciation, if any.

Plaintiff denied positively that he had sold the automobile to defendant, that he had ever received pay for it from him or that any money had been returned by him or for him to defendant.

He stated that he, at the time of the purchase of the motor vehicle, had a joint account with his wife in the Farmers and Merchants Bank of Springfield and that if he wanted any information as to the amount on deposit he asked her, as she did the bookkeeping. Each of them made deposits to and drew checks on the account. He denied any knowledge of the deposit of a check for $1900.00, given by defendant, to his account immediately after he delivered the car to defendant. He also denied that defendant had ever demanded a bill of sale to the Chevrolet. He testified that his wife had never told him that her father (defendant) had paid for the Chevrolet.

Omar French testified for plaintiff and stated that he was acquainted with plaintiff, that he sold him the automobile in question, received his check for $1900.00 on the Farmers and Merchants Bank of Springfield, Missouri; that he endorsed and deposited it and received the money on it. He identified his endorsement on the back of the check. He further stated that at the time of the delivery of the automobile, there was also delivered to plaintiff an application for certificate of title and that he executed and delivered to plaintiff a

certificate as dealer or vendor of the automobile. He denied issuing two of such dealer certificates or delivering more than one to the plaintiff but he testified that defendant at one time came down to Republic and asked him to execute a duplicate to him. This he refused to do. Thereupon plaintiff rested his case.

Defendant testified that he received the automobile as stated by plaintiff, but that instead of being consigned to him for re-sale, it was a sale outright to him and that he paid therefor the sum of $1900.00. This payment was by check dated February 28, 1948, the date of the delivery of the car to him and the check was made payable to Versal Hayes, defendant's daughter and plaintiff's wife. This check was introduced in evidence. It was endorsed by Versal Hayes and deposited to the account of plaintiff and his wife on March 1, 1948, and was paid by the Citizens Bank of Ava, upon which it was drawn, March 4, 1948. The records of the Farmers and Merchants Bank show this deposit.

Defendant was asked on cross-examination if any of this amount had been returned to him and he testified positively that it had not. He further testified that he had many times demanded of plaintiff documents by which he could secure a title to the Chevrolet; that plaintiff had promised to furnish them to him but had failed to do so; that he did not know plaintiff was claiming ownership of the car until the day plaintiff brought this suit and the writ of replevin was served upon him. He further stated that at the time he received the car, he also received from plaintiff the application for a certificate of ownership and a certificate of the dealer or vendor signed by Omar French and this certificate was introduced in evidence. He stated, however, he could not procure a title on the certificate for the reason it was in the name of plaintiff.

Versal Young, plaintiff's ex-wife, testified for defendant. She stated that plaintiff sold the car to her father, the defendant, for $1900.00; that her father gave her the check for that amount, that she deposited it in the Farmers and Merchants Bank to the joint account of herself and plaintiff on the first day of March, 1948; that none of it was ever returned to the defendant because it was for the purchase price of the automobile delivered to him. She stated that all of these facts were well known to her husband, that she discussed them with him and he insisted that she deposit the check at once, which she did. On cross-examination she was again asked if any of this money had been returned to her father, which she denied. She was also asked if she had, on April 24, 1948, written a check to her father for $1900.00, which was later paid, to which question she replied she could not remember.

She was then shown a check dated April 24, 1948, payable to defendant, drawn on the account of herself and plaintiff in the Farmers and Merchants Bank which had been paid by the bank April 27, 1948.

She then stated that this check referred to another automobile deal entirely, that it was a refund to her father, the defendant, for $1900.00 he had let her husband have to buy a pickup truck from the French Motor Company at Republic and that it had nothing whatever to do with the transaction in litigation.

The defendant was recalled, examined the check and stated that it must have been given in connection with the purchase of a pickup truck from the French Motor Company, which was a transaction wholly disconnected from the one in controversy, and was merely repaying money that he had let plaintiff have to make that purchase.

The case was submitted to a jury which returned a verdict for plaintiff, holding him entitled to the possession of the automobile and allowing him damages for depreciation in the sum of $600.00.

Defendant's first objection is to Instruction No. I where the court told the jury at the close of the main instruction "you should also in your verdict determine and declare the value of said automobile." It is alleged that there was no evidence of the value of the automobile as of the day of the trial, and that the jury found the value as of "the 19th day of May, 1949*   *." The trial was had on September 25, 1950. It is true that the statute (Sec. 533.140 Mo. R. S. 1949) requires the jury to find the value of the automobile and that value must be as of the day of the trial. Union House Furnishing Co. v. Woods, (Mo. App.) 39 S. W. (2) 448. Yahlem Motor Co. v. McCord (Mo. App.) 299 S. W. 49. This is for the benefit of the winner in the litigation so he may elect to take a judgment for the found value or to take the property, itself. In this case the plaintiff elected to take the Chevrolet, so there could be no injury to defendant even if the jury found a value not supported by the evidence, or value at a time other than the day of trial.

The defendant also objects to Instruction No. 2, which permitted them to find for the plaintiff in a sum not to exceed $1000.00 for any depreciation in value between the time of the institution of the suit and the trial of the cause. This instruction does not tell the jury when the suit was instituted, neither was there any evidence of the value of the automobile at the day of the trial. The only evidence of its value after the date of its delivery was based upon what was apparently a casual observation by the plaintiff three weeks before the day of the trial while the car was parked on a public street in Springfield and occupied by defendant and plaintiff's ex-wife. Referring to his observation at that time, the plaintiff said that the automobile looked as good as new and that if it were as good on the day of the trial as it appeared to be three weeks before, its reasonable value was between $1100 and $1250.

He further testified that generally automobiles had depreciated in value from the date of the purchase until the day of the trial, but there is no evidence as to how much they had depreciated. An instruction

must be based upon evidence. Biehle v. Frazier, 360 Mo. 1068, 232 S. W. (2) 465. Rothe v. Hull 352 Mo. 926, 180 S. W. (2) 7. See K.N. 252, West's Mo. Digest, Trial.

We do not believe the evidence of depreciation between the time of the institution of the suit and the day of the trial was sufficient to submit the proposition to the jury but that the jury under this instruction could only base their finding upon guess-work, speculation and conjecture. This is not one of those cases where the automobile was disposed of and gone and could not be examined and evidence offered as to its value at the date of the trial. See: Union House Furnishing Co. v. Woods (Mo App.) 39 S. W. (2) 448. From the evidence, this car was available and could have been inspected and appraised.

The burden of proof was upon plaintiff to show the amount of depreciation. (Muzenich vs. McCain (Mo. App.) 274 S. W. 888.)

As another assignment in his motion for new trial, defendant asks that the same be sustained upon the ground of newly discovered evidence. In support of this claim, he testified that he had gone back to Ava, Missouri, after the trial, looked through records that he had not had with him in Springfield at the trial, and which related to an entirely different transaction, and he had found a check that plaintiff had drawn on the account of defendant for $1900.00, dated April 5, 1948, payable to the French Motor Company and paid by the Citizens Bank of Ava, upon which it was drawn, April 7, 1948; that this money was used by plaintiff to buy a pickup truck from the French Motor Company and that the check about which he had been examined at the trial, dated April 24, signed by his daughter, and payable to him, was a refund of the money with which plaintiff had purchased this pickup truck. This truck was to have been delivered to defendant, by him sold and the profit split with plaintiff. However, plaintiff sold the truck and did not deliver it to defendant although defendant's money was used to purchase it. That the check dated April 24th, 1948 was not a refund of any of the purchase price paid for the Chevrolet automobile, was wholly disconnected with that transaction and did not show a repayment to him of the amount of $1900.00 he had paid to his daughter and plaintiff for the Chevrolet.

We recognize the general rule law to be that the granting of a new trial upon the ground of newly discovered evidence is not favored (Devine v. Wells, 300 Mo. 177, 254 S. W. 65) that it rests within the sound discretion of the trial court (Arnold v. May Department Stores Co. 337 Mo. 727, 85 S. W. (2) 748), that before it should be granted, failure to procure it at the trial must not be because of lack of diligence, (Mayor of Town of Liberty v. Burns, 114 Mo. 426, 19 S. W. 1107) that it should be evidence that is not merely cumulative or impeaching, (Wabash R. Co. v. Mirrielees, 182 Mo. 126, 81 S. W. 437, Perkins v. Silverman, 284 Mo. 238, 233 S. W. 895), that it must be

material evidence and that it must be of such character as would probably produce a different result on a new trial. (Citizens Bank of Senath v. Johnson (Mo. App.) 112 S. W. (2) 917.) We know that a motion for new trial is rarely sustained without all of the foregoing elements are present.

With these principles in mind, let us review the situation in which defendant found himself at the trial. Plaintiff was contending that defendant had never paid him for the car; that it was not a sale of the car but a consignment for sale and that he had never received anything for it. Defendant contended that it was a straight out and out sale and that he had paid the purchase price in full. This was denied in plaintiff's reply. There was no allegation or intimation or testimony on the part of plaintiff that he had ever received the $1900.-00 and returned it or that it had been returned for him. Now after plaintiff had rested his case and nearly at the close of defendant's evidence, counsel for plaintiff, on cross-examination, presents a check dated April 24, 1948, which might indicate, standing alone and unexplained, a repayment of defendant's $1900.00 purchase payment. Mr. Daniel, one of the attorneys for plaintiff in his argument said:

"I submit to you that that $1900.00 represented by the check in February, 1948, was repaid in April when she (plaintiff's ex-wife) made that check payable to Mr. Adams."

Mr. Walker, another attorney for plaintiff, argued:

"Isn't it peculiar that Mr. Adams gave a check to his daughter for $1900.00 and she deposited it to her account—and then, lo and behold, on the 24th day of April, 1948, his daughter gave him back a check for $1900.00—that very same amount. Oh! Mr. Williams (defendant's attorney) laments the fact that we didn't tell them in advance that it would be our defense. Ladies and Gentlemen, wouldn't we have been silly to have said, 'Here, we have got the check here where the money was paid back,' and then let these witnesses come in and fix up their stories to fit that issue—and you see how lame it is."

Defendant objected to these arguments and his objection was overruled.

Plaintiff in his direct testimony did not mention this check. Though called in rebuttal, he did not explain it or even mention it.

Defendant and his daughter both testified that in their recollection, it had nothing whatever to do with the transaction in controversy but must have been in connection with the purchase of a pickup truck sometime after the sale of the Chevrolet Sedan. All the evidence shows that plaintiff and defendant had been interested in a great number of car deals and it was not surprising if defendant and his daughter; when suddenly confronted with the $1900.00 check, payable to defendant, were unable to remember details of one of many transactions more than two years ago.

In the pleadings and in the evidence up until the time the check was presented to them on cross-examination, the whole theory of plaintiff was that nothing had been paid by defendant for the Chevrolet Sedan either by check or in cash. The theory of repayment was actually advanced the first time in the argument. Defendant was not put upon notice of the defense of re-payment by the pleadings but quite the contrary. Lee v. Braggman, et al., 162 N. W. 788, 39 S. D. 175 46 Corpus Juris, P. 258, Note 71. After the verdict went against him, defendant went home to Ava, some 60 miles away from the scene of the trial, (which we judicially notice) and while looking through his records discovered a check dated April 3, 1948, drawn on his account by plaintiff for $1900.00, payable to French Motor Company, which was used to purchase a pickup truck and that the check signed by his daughter on plaintiff's and his wife's account, April 24, 1948, nineteen days later, was merely repaying money advanced to the plaintiff for the purchase of this truck. This was documentary evidence and the necessity of producing it could not have been foreseen until it was too late. With this evidence presented at the trial, it would have left the record showing an absolute payment to plaintiff for $1900.00 at the time the Chevrolet Sedan was delivered, that that amount was deposited in plaintiff's bank account and that defendant had not been repaid.

We can think of no more material evidence justifying a new trial because of newly discovered evidence than this. The importance of the check dated April 24, 1948, was recognized by plaintiff's counsel, hence their arguments above quoted. It appears, from the argument that the existence of this check and the purposes for which it was to be used, were deliberately concealed from defendant until it was too late for him to refute it. This newly discovered evidence goes to the very heart of the controversy and we do not think that defendant displayed lack of diligence in not foreseeing the necessity of having this check, relating to an entirely different transaction, at the trial of the replevin suit. Undoubtedly the fact that $1900.00 had been returned to defendant by the check dated April 24, was one of the main items of evidence that was considered by the jury. But the discovery that plaintiff had drawn on defendant for that amount nineteen days before in an entirely different transaction would have completely destroyed the inference the jury got from the production of the check. We think a new trial should have been granted under the circumstances of this case upon the ground of newly discovered evidence.

Defendant also complains of the failure of the court to sustain objections to the arguments, but those are matters that will not likely occur on a retrial and we need not unnecessarily lengthen this opinion by discussing them.

For the reasons given, the judgment of the trial court should be reversed and remanded. It is so ordered. *Blair, J.,* and *McDowell, J.,* concur.