**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Appellant,**

**v.**

**BLOOMFIELD TRACTOR SALES, INC., et al. Exceptions of Andrew McClard and Evelyn McClard, Defendants-Respondents.**

No. 8303.

Springfield Court of Appeals.

Missouri.

July 15, 1964.

Raymond S. Roberts, Farmington, George Q. Dawes, Sikeston, for plaintiff-appellant.

C. A. Powell, Powell, Jones & Ringer, Dexter, for defendants-respondents.

RUARK, Presiding Judge.

This is an appeal by the State Highway Commission (hereinafter called "Highway") from a judgment based on a jury verdict assessing damages to defendants McClard (hereinafter called "Owners") in the sum of six thousand dollars. Highway undertook to straighten and improve Supplementary Route SE (which will be referred to as Farm-to-market Route E) which ran south of Bloomfield in Stoddard County. In so doing, Highway condemned Owners' tract which lay on the south side of such Route E. The tract extended approximately two hundred feet east and west along the road. It was sixty-five feet deep (north and south) on the west end and tapered down to a ten-foot depth at the east end. It contained a total of 14/100 of an acre. This property was just outside the city limits of Bloomfield (population 1,330 by 1960 Census) and, by Owner Andrew McClard's testimony, "hardly a fourth of a quarter" east of the intersection of said Route E with north-south State Highway No. 25. By the testimony of the State Highway Engineer, it lay "approximately six hundred some odd feet" east of such intersection. On the west end of the tract was a building forty feet by forty feet. This building was made of tin, with a self-supporting roof—that is, it had no posts except along the walls. The building had a dirt floor. Owner Andrew McClard testified that the building was approximately fifteen years old. When built, old or used tin had been used (only) on the back and "a little bit" on the west end. He had purchased the building, then vacant, approximately five years before from a former

employer at a price of one thousand dollars. Since then he made some minor repairs, including the installation of a "tin horn" (we don't know what that is) and the graveling or regraveling of the driveways. He used the building for a repair shop, his principal business being the repair of farm machinery. He was of the opinion the property was worth sixty-five hundred dollars.

On re-examination by his own counsel, Owner McClard was asked if he knew of any similar property "anything like being the same property," in the community which had been sold in the last two years. He testified as to a property known as Leon's Custard Stand situate on State Highway No. 25 a short distance south of the intersection with Route E and fronting about one hundred feet along said State Highway No. 25. This business building was a "block" building, twenty feet by twenty feet, with something like stucco inside. He said it sold for eighty-five hundred dollars. He had examined the deed.

Highway's witness Chandler, an appraiser of Sikeston, placed the value of the property at twenty-three hundred dollars. He said there was no other property like it in the vicinity.

Highway then called Frank Stanley. He testified that he lived in adjoining New Madrid County and that he was in the farm loan and real estate business and did appraisal work. He had been engaged in that business for four years. He was acquainted with land and real estate in Stoddard County and had appraised property in Stoddard County and in and around Bloomfield during that period. He had followed the sales of property up and down Highway No. 25 in Stoddard County as to what the property sold for, and he was acquainted with sales of property of various kinds in and around Bloomfield for the last four or five years. He had appraised town and suburban property in or near various towns in the surrounding area, including some thirty commercial properties, but he had not appraised

any business property inside Bloomfield. He was employed to appraise the property here involved. He went first to look at it and then made an investigation as to what other properties in the vicinity had sold for in the past five years, and he then upgraded or downgraded them in arriving at his appraisal of Owners' property. He mentioned three tracts (apparently vacant lots) concerning which he had gone to the records to ascertain the sale price and then checked further to see if the records reflected the proper sale and took that into consideration at the time he made his appraisal. Owners objected to the witness's opinion because he had had no experience appraising business property in the town of Bloomfield and also because the witness's testimony showed that he based his judgment partly on what someone else told him.

"THE COURT: Mr. Witness, what did you base your judgment on in arriving at an opinion as to the value of the McClard property, on what did you base that on?

"THE WITNESS: Well, Your Honor, I used—first I established the value of the lot, based on vacant lot sales, and then, secondly, I determined the value of the building, and used the aggregate for what I thought the total property was worth. .

"THE COURT: Well, how did you arrive at the sale price that you used on the sales of vacant lots?

"THE WITNESS: First I checked the instruments on record in the courthouse here, and then, secondly, I verified all three sales with the buyer.

"THE COURT: You did what?

"THE WITNESS: I verified the purchase price with the buyer.

"THE COURT: You mean by conversation?

"THE WITNESS: Yes, sir.

"THE COURT: What experience have you had in appraising town prop-

erty, Mr. Stanley, over what period of time, and about how many appraisals and so forth?

"THE WITNESS: Over the past four years I've appraised property in Kennett, Scott City appraised several commercial properties in East Prairie. Probably thirty altogether, some of them were suburban, in the edge of these small towns like Bloomfield. It's hard to classify whether it was town property or suburban property sometimes.

"THE COURT: The objection is sustained."

Highway offered to prove that in the opinion of the witness the value of the property was twenty-six hundred dollars. Objection was made "for the same reasons stated."

"THE COURT: He says he based it in part on a conversation he had with other people, which is not in evidence."

The objection was sustained.

After verdict, motion for new trial was filed charging in addition to excessiveness of the verdict, error in excluding the testimony of witness Stanley as to value. A further ground was that the testimony of Owner McClard as to the sale of Leon's Custard Stand tract on Highway No. 25 for eighty-five hundred dollars was false and misleading because such sale included the purchase of various personal property and equipment (incident to a soft ice cream business); that the verdict had been reached by a comparison with this sale; that plaintiff had newly discovered (since trial) evidence that the purchaser and seller of the tract so compared would testify that the purchase price of eighty-five hundred dollars included the personal property; that the Owner's testimony had come as a surprise at the trial; and that Highway had not been guilty of lack of diligence. The motion was accompanied by affidavit of Highway's attorney that Seiling and Jones (seller and purchaser) refused to make affidavits but stated that, if called as wit-

nesses, they would testify that the eighty-five hundred dollars sale price included valuable fixtures, machinery, and equipment; that Highway had no knowledge or way of discovering such evidence prior to trial and had no reason at the time of trial to doubt Owner's testimony. Thereupon a hearing was held, and testimony was taken on the motion.

Buyer Jones testified that the sale of Leon's Custard Stand and the sale price of eighty-five hundred dollars included an ice-cream-making machine and three soda machines and a milk cooler. He estimated the personal property at two thousand dollars. No one from the Highway Department talked to him about the sale previous to the trial. He was at home the day of trial, and no one called him; but someone came to see him that night. The attorneys for the Highway testified that they knew nothing about the custard stand sale until after the trial, when they were informed that there was a probability that the sale included personal property. The evidence shows that the deed involved in the Leon's Custard Stand sale reflected a consideration of eighty-five hundred dollars. It did not reflect the inclusion of personal property in the sale.

In the trial of the case here involved, the voir dire commenced shortly after nine a. m. Four witnesses were examined and some eight exhibits were marked and received in evidence. The record does not reflect the arguments, if any, but it appears that the jury received the case shortly after eleven o'clock and returned a verdict about noon or shortly thereafter.

 As to the competency of witness Stanley: There is no exact rule by which the qualification of a witness to testify as to the value of land can be measured. Love v. United States, 8th Cir., 141 F.2d 981, 984. As a general rule, the market value of real estate is established by voluntary sales of other similar property made in the same general vicinity and not too remote in time. Jackson County v. Meyer, Mo., 356 S.W.2d

892, and cases at 894; Missouri Public Service Co. v. Hunt, Mo.App., 274 S.W.2d 27; City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853; 85 A.L.R.2d 110, 119.[1] Consequently the witness (other than the owner) must, in ordinary circumstances, have some knowledge or information as to sales of similar or comparable property. Generally stated, the knowledge of the witness must be such as is demanded by the nature of the subject matter and such as can reasonably be expected in the circumstances. The means of knowledge, and therefore the requirements in respect to qualification, may be higher in an area where there are frequent sales of similar property and lower where such sales are infrequent or nonexistent. 32 C.J.S.Evidence § 545, p. 301; Orgel, Valuation under Eminent Domain, § 138, p. 589. This has sometimes been referred to as a "sliding scale" standard. See 159 A.L.R., Anno. 14–16. And the tendency is to admit any evidence which sheds light on the question, leaving it to the discretion of the trial court to keep it within bounds. Artificial rules of evidence which exclude from the jury matters which men consider in their everyday affairs hinder, rather than help, the arrival at a just result. United States v. 25,406 Acres of Land, 4th Cir., 172 F.2d 990.

■■■ One need not be an "expert," in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification. 32 C.J.S.Evidence supra, § 545, p. 301 et seq.; Lewis, Eminent Domain, 3d Ed., Vol. II, § 656; State ex rel. Burcham v. Drainage Dist. No. 25, Mo.

App., 272 S.W.2d 712; Wipfler v. Basler, Mo., 250 S.W.2d 982(14); State ex rel. State Highway Commission v. Devenyns, Mo.App., 179 S.W.2d 740; see Alexander v. Llewellyn, Mo.App., 70 S.W.2d 115. As was said by Bennick in City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 1. c. 157:

> "* * * the considerations which govern the admissibility of opinion evidence are, for practical purposes, identical with those that actuate ordinarily prudent persons in looking for advice in connection with the conduct of their own personal business affairs. It follows, therefore, that if a witness, whatever his occupation or profession, is one whose opinion would be sought after and given weight by ordinarily prudent persons seeking information upon the question of the value of or damage done to the property which is the subject of the inquiry, he is competent to give his opinion in evidence in the case so far as the matter of his qualification is concerned."

One may add to, and sometimes acquire, the superior knowledge which qualifies him to testify as to value by making a study and inquiry as to such sales. Boyce v. Gingrich, 154 Mo.App. 198, 134 S.W. 79; Brayton v. Gunby, Mo.App., 267 S.W. 450; Ruddy v. Gunby, Mo.App., 180 S.W. 1043; see Hotchner v. Liebowits, Mo.App., 341 S.W. 2d 319, 329. As a matter of fact, it has been said that an expert should make careful inquiry into the facts concerning similar sales upon which he bases his opinion as to land values. State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 695. He may take into consideration the consideration stated in a deed as a source of information. Ramming Real Estate Co. v. United States, 8th Cir., 122 F.2d 892, 895. And his competency as an expert may not be attacked on the ground that he has considered hearsay or sales that would

---

[1]. Contrary as to sales of dissimilar property. School Dist. of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51; St. Louis Electric Terminal R. Co. v. MacAdaras, 257 Mo. 448, 166 S.W. 307.

otherwise be inadmissible. 159 A.L.R., Anno. pp. 43–44; City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 849; United States v. 5139.5 Acres of Land, 4th Cir., 200 F.2d 659; see State ex rel. State Highway Commission of Missouri v. Craighead, Mo.App., 65 S.W.2d 145, 149.

"An expert quite frequently bases his opinion of value to some degree on what he learned through inquiry and investigation. To be sure, such inquiry and investigation constitute purely hearsay and are inadmissible; but as Mr. Justice HOLMES said: 'An expert may testify to value although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience.'" Jahr, Eminent Domain, Valuation and Procedure § 134, p. 207.

■ The qualification of an expert or one standing in the role of an expert is a preliminary question and is largely a question for the trial court whose discretion will not ordinarily be overruled unless abused or exercised in clear error of law. State ex rel. State Highway Commission v. Devenyns, supra, Mo.App., 179 S.W.2d 740; Christian v. Jeter, Mo., 287 S.W.2d 768; Minor v. Lillard, Mo., 306 S.W.2d 541; Union Elec. Co. of Mo. v. Simpson, Mo. App., 371 S.W.2d 673, 677. But we question whether an exclusion based on an erroneous application of the hearsay rule is really an exercise of discretion.[2]

■ Without further extended review of the evidence in this case, we believe that the witness Stanley was not incompetent to testify as to the value. We reach this conclusion from the facts that: he was experienced in the real estate business as an appraiser; he was familiar with values and had made appraisals over the general area, including appraisals of business property in small towns and their outskirts in the general area; he had followed the sales of property up and down Highway No. 25; there was no (tin building) property similar to this in the immediate vicinity; he had made a search of the records for sales of similar business acreage in the immediate vicinity and verified such by making contact with the parties thereto; he had inspected the property and had an opinion as to its market value.

But whether the refusal of the evidence was error is a more difficult question. The appellate courts have been reluctant to reverse discretionary decisions. Our quandary is: Was the evidence refused because the court felt the witness's basis of knowledge was acquired through "hearsay" and therefore he was disqualified from expressing such opinion? If so, and if the witness was otherwise qualified, this was error. The remarks of the court would indicate that this "hearsay" conclusion at least played a part in the decision to exclude, and if that be true the exclusion was not a full exercise of discretion but a ruling based upon a mistake of law.

■ As to newly discovered evidence: Generally, motions for new trial on the ground of newly discovered evidence are not favorites of the law. Public policy requires that litigation come to an end. Curry v. Thompson, Mo., 247 S.W.2d 792, 31 A.L. R.2d 1225. The general principles governing such motions are: The evidence must have come to the knowledge of the movant since the trial. The movant was not guilty of lack of diligence in discovering it sooner. The evidence is material and would probably produce a different result on a new trial. Such evidence must not be merely cumulative, and the object must not be simply to impeach the character or credit of a witness. Womack v. McCullough, Mo., 358 S.W.2d 66, and cases compiled at 68; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616(15).

■ Another general rule is that the trial court is given a broad discretion in

---

2. See Pridgen v. Gibson, 194 N.C. 289, 139 S.E. 443, 54 A.L.R. 855; United States v. 5139.5 Acres of Land, supra, 4th Cir., 200 F.2d 659.

ruling motions on such grounds, and it is usually said that it is only where the discretion has been abused that the appellate courts will interfere. Davis v. Illinois Terminal R. Co., Mo., 326 S.W.2d 78; Van Meter v. Beckers, Mo.App., 42 S.W.2d 951; Ward v. Goodwin, Mo., 345 S.W.2d 215, 219. But this discretion is not absolute. The doctrine of due deference is not to be employed to anesthetize against all prejudicial error (Faught v. Washam, Mo., 329 S.W.2d 588), and the appellate courts will intervene when the ends of justice require. Thus: Womack v. McCullough, supra (where the *granting* of the motion was reversed); Hayes v. Adams, 241 Mo.App. 560, 244 S.W.2d 123, and Foerstel v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 792 (where the *refusal to grant* was reversed).

That knowledge concerning the fact that the sale price of Leon's Custard Stand included a quantity of personal property came to Highway after the trial seems not to be in question. As to diligence: The "diligence" required of a movant means industry and careful attention called for by the circumstances. It does not mean impeccable, flawless investigation in all situations. Foerstel v. St. Louis Public Service Co., supra; Young v. St. Louis Public Service Co., Mo., 326 S.W.2d 107, 112. We think that the failure to examine the sale of a twenty-foot by twenty-foot block and stucco building property on State Highway No. 25 can hardly be said to have been a lack of diligence. The buildings had little similarity in size or construction; and, had the record of this sale been examined beforehand, it would have shown nothing to indicate that the purchase price included other property. In the preparation for trial involving land values, due diligence would not ordinarily require that the parties make an investigation of every sale of *every character* of property.

The trial, up to submission to the jury, lasted not over two and one-half hours. This period covered the voir dire and examination of witnesses, introduction of ex-

hibits and, presumably, statements and arguments of counsel. We think that there was no lack of diligence in failing to assume that Owner (who said he had seen the deed) testified falsely or mistakenly, or in failing to make an independent investigation during this two and one-half hour period. Counsel were then occupied with the things at hand. Cited by respondent is Sang v. St. Louis, 262 Mo. 454, 171 S.W. 347. In that case, on the first day of the trial, the plaintiff mentioned two witnesses and gave testimony as to how they might be located through another man. The trial was recessed or "laid over" until the next day and again on the following evening. Thus there were two nights and three days involved. It further appeared that this testimony dealt with whether a street lamp was lighted and, since the issue was over a hole in the street which was flooded by water and the presence of a light probably would not have disclosed the hole, the evidence probably would not have changed the result. In Young v. St. Louis Public Service Co., supra, the moving party actually had the papers in hand and had subpoenaed the claim file which contained the information involved but simply failed to look at it until after the trial. We think these cases are not comparable on the question of diligence and opportunity for knowledge. On the other hand, in Hayes v. Adams, supra, the movant actually had the documentary evidence in his possession but didn't know it would be material, hadn't hunted it out, and didn't bring it to trial. In Van Meter v. Beckers, supra, the parties actually had the documentary evidence on the issue being tried but did not know or had forgotten that they had it until they hunted it up *after* the trial. In the Hayes case, it was held error not to sustain the motion. In the Van Meter case, the sustaining of the motion for new trial was approved. It is our opinion that under the circumstances here Highway should not be charged with lack of diligence.

As to whether the evidence was material, cumulative, or impeachment of a witness:

Two classes of evidence had been submitted to the jury. First, opinion evidence—an opinion by one appraiser and an opinion by Owner. Second, comparative value—testimony concerning the so-called "similar sale" for eighty-five hundred dollars as a basis of comparison. The evidence of this sale price, being the *only* business building sale tendered to the jury, was of some weight. If the evidence concerning it was false or mistaken, and if the price of eighty-five hundred dollars was *not* actually for the real estate, then it was a matter which Highway had a right to show as a direct refutation of a material fact. That such refutation might have also had a tendency to impeach the credit of the owner witness is beside the point.

As to whether the production of this evidence would have produced a different result: Older and wiser lawyers have frequently declared that "you never can tell what a jury will do." We cannot pose as prophets, but it would appear that there is a probability or likelihood that the result would have been different had the jury known that the "similar building" property sale price included other property.

■ In considering this case, we have constantly borne in mind that we have two rulings. The first one (denial of Highway's witness Stanley) may, or may not, have been an exercise of discretion. The second (on new trial for newly discovered evidence) quite obviously was an exercise of discretion. We need not decide whether either ruling, taken singly and alone, would amount to such prejudice as to require reversal, for the combined result of the two rulings is that the jury never had the opportunity to hear an opinion witness on the (equally) disputed question of value and were therefore limited to only two witnesses on that score—one of them being Owner Andrew McClard, and the other a witness for Highway. And the jury also were imposed upon in the sense that they were given a false idea of the actual sale of a business property in the vicinity (it being

the only comparative building sale in evidence) and were denied the opportunity to learn the true sale price from which they might make a fair comparison in fixing their value. When we consider these things together and in the cumulative, we cannot escape the conclusion that appellant did not have a fair opportunity to present the facts to the jury. We must, therefore, reverse and remand. It is so ordered.

STONE and HOGAN, JJ., concur.