Delores E. **MERRICK** and Richard T. **Stack, Plaintiffs-Respondents,**

v.

Siegried Carl **LENSING,** **Defendant-Appellant.**

Nos. 43558, 43562.

Missouri Court of Appeals, Eastern District, Division Three.

June 16, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied Nov. 10, 1981.

Jerome W. Seigfreid, Louis J. Leonatti, Seigfreid, Runge, Leonatti & Pohlmeyer, Mexico, for defendant-appellant.

Walter D. McQuie, Jr., McQuie & Deiter, Montgomery City, for plaintiffs-respondents.

CRIST, Presiding Judge.

Action by plaintiffs-respondents (hereinafter "landlocked owners") to establish a private road across appellant's (hereinafter "servient owner") land pursuant to §§ 228.-340 to 228.480, RSMo. 1978. We affirm.

The trial court ruled landlocked owners were entitled to a way of strict necessity over servient owner's land. A jury assessed damages for the taking of the roadway in favor of servient owner in the sum of $7,500.00. All parties appeal.

Servient owner contends there was no strict necessity for the proposed road because he had offered landlocked owners other land on which to construct a road to their landlocked forty acres. Landlocked owners insist servient owner did not properly appeal the strict necessity issue and request a new trial on the issue of damages.

Servient owner lived and farmed his family homestead (approximately 67 acres) located on the north side of Missouri Route 94 in Montgomery County, Missouri. In 1972, landlocked owners purchased a landlocked 40 acres abutting servient owner's 67 acres. Six or seven times per year landlocked owners travelled Missouri Route 94, crossed servient owner's land with his permission, and entered onto their 40 acre tract. This route provided landlocked owners only method of ingress and egress.

On February 3, 1978, landlocked owners filed a petition alleging in part:

There is a strict necessity that a private road forty feet wide be established across Defendant's land from Plaintiffs' [landlocked owners] property of Missouri Route 94 running along the route of the present roadway across Defendant's [servient owner] property used by Plaintiffs [landlocked owners] for access to their said land, the centerline of said private road to be particularly described after a survey thereof to be made as part of these proceedings.

On June 22, 1978, servient owner filed an answer and counterclaim alleging, in part, the proposed roadway across the approximately center of servient owner's land would cause irreparable damage to servient owner's land. Servient owner offered, in this pleading, a 12 foot strip for roadway along the east perimeter of his 67 acre tract. This offer was later deemed inadequate.

At the hearing on landlocked owners petition, servient owner offered, on the record, to give landlocked owners a 40 foot strip for roadway along the east perimeter of his 67 acre tract. Both sides offered evidence of the feasibility of the 40 foot strip along the east side of servient owner's land and of the feasibility of the 40 foot strip down the approximate center of servient owner's land. An exhibit was admitted into evidence showing the centerline of the proposed private road down the approximate center of servient owner's land.

On March 28, 1979, the trial court found the allegations of landlocked owners' petition to be true and ordered the establishment of a private way of strict necessity, in favor of landlocked owners, across servient owner's land. It further ordered, without specifically describing the proposed road, the appointment of three commissioners to view servient owner's land and mark out a road thereupon not exceeding 40 feet in width. Servient owner appealed this order to our court. His appeal was deemed premature and was dismissed on November 26, 1979.

On January 29, 1980, the commissioners, the parties, their attorneys, together with servient owner's expert witness Bernie A. Hillerman and landlocked owners' expert witness Elmer Birk, met at servient owner's property. According to an affidavit filed by servient owner's lawyer, landlocked owners' lawyer told the commissioners the trial court had determined the roadway on the east line of servient owner's property was not suitable. Landlocked owners' expert witness also told the commissioners that a roadway could not be built along the east property line. There is no record of what the other persons present may have said about the location of the roadway.

Thereafter, the commissioners filed their report showing the location of the road down the approximate center of servient owner's land. The commissioners opined the location of the road did not make the removal or erection of fences necessary. They assessed damages against landlocked owners and in favor of servient owner in the sum of $7,500.00. Both parties filed exceptions to the commissioners' report. The issue of servient owner's damages was then submitted to a jury. On July 23, 1980, the jury assessed damages at $7,500.00. Both parties filed motions for new trial and notices of appeal from *the judgment entered on July 23, 1980.*

■ Landlocked owners allege servient owner's notice of appeal does not encompass the strict necessity issue because it is directed to July 23, 1980 judgment for damages and not to the March 28, 1979 order finding strict necessity for the roadway. We disagree.

Servient owner made an attempt to appeal the March 28, 1979 order to this court. After he had filed his brief on the strict necessity issue, we dismissed the appeal as premature. *Merrick v. Lensing,* No. 41538, Nov. 26, 1979. Landlocked owners cite *Labor Discount Center, Inc. v. State Bank & Trust Co. of Wellston,* 526 S.W.2d 407 (Mo. App.1975) and *Donnell v. Vigus Quarries, Inc.,* 489 S.W.2d 223 (Mo.App.1972). These cases are inapposite because the appellants therein directed their appeals to only a portion of a final judgment. In the instant cause, the question of damages was prema-

ture if the court erred in finding strict necessity for the roadway. The strict necessity issue was contained in servient owner's motion for new trial and servient owner did not specifically limit his appeal. The issues were sufficiently intertwined that the notice of appeal triggered the whole case. *Reid v. Jones*, 594 S.W.2d 339, 341, Note 2 (Mo.App.1980).

■ But alas! After winning the long, hard-fought battle of preserving his point on appeal, servient owner must now lose the war. The real issue in this case centers on the propriety of the trial court's order of March 28, 1979 finding strict necessity for a roadway across servient owner's property. Servient owner insists the trial court had no jurisdiction to establish a private road. There was no strict necessity, he alleges, because he had tendered to landlocked owners a reasonable alternative route. There was, however, substantial evidence by landlocked owners' expert witness, Birk, that the alternative route was not a reasonable one, and the trial court believed this evidence. Birk testified the proposed east roadway would cost more than the value of landlocked owners' land and the offered 40 foot strip on the east would not be wide enough to permit construction of the road on the fill because of the steepness of the terrain. An easement of 64 feet and 70 feet would be required. Servient owner relies on *Welch v. Shipman*, 357 Mo. 838, 210 S.W.2d 1008 (1948). In *Welch* the trial court concluded that there was a reasonable alternative route. The trial court herein determined that the proposed east roadway was not a reasonable alternate route. See, *Sutter v. Sims*, 563 S.W.2d 533 (Mo.App. 1978). In accordance with § 228.340, the trial court decided the roadway was a matter of strict necessity entitling landlocked owners to an easement of necessity. *Evans v. Mansfield*, 364 S.W.2d 548, 551 (Mo.1963). We may disagree with the wisdom of this order, but we are not permitted to substitute our judgment for that of the trial court. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Servient owner asserts error in that landlocked owners' lawyer told the commissioners the trial court had determined the proposed east road was not suitable. He states the commissioners, and not the trial court, must establish the roadway, citing *Lewis v. Hilkerbaumer*, 599 S.W.2d 7, 9 (Mo.App. 1980). The obiter dictum in *Lewis* did not give the commissioners the unfettered right to locate the roadway anywhere on servient owner's 67 acre tract. The commissioners were authorized by § 228.340 "to view the premises and to mark out the road, ..." "The road" to be marked out was the one generally described in landlocked owners' petition and made more specific by the evidence. The trial court found the allegations of the petition to be true and ordered the commissioners to mark out the road. The roadway was not established until the one described in the petition was proved, marked out by the commissioners, reported and approved by the court.

■ The issue of the general location of the roadway is for the court. Marking it out is for the commissioners. Section 228.-340, RSMo. 1978. The failure of the trial court to specify the general location of the roadway, except by reference to the petition, was not fatal. Had the trial court found the east road a reasonable alternate route, it would have found a lack of strict necessity and nothing more.

Servient owner makes no request of this court for a new trial on the issue of damages. He does, however, complain of error in a withdrawal instruction given to the jury as follows:

> The matter of noise and traffic on the roadway established is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

Without deciding whether or not the point has been properly preserved, we rule it has no merit. *State ex rel. State Highway Commission v. Watkins*, 51 S.W.2d 543 (Mo. App.1932); *Wilson v. Kansas City*, 162 S.W.2d 802, 805 (Mo.1942); *State ex rel. State Highway Commission v. King Brothers Motel, Inc.*, 388 S.W.2d 522, 525 (Mo. App.1965).

Landlocked owners want a new trial on damages only. The jury was instructed that the date of taking was *March 6, 1980,* the date the trial court entered its order establishing the roadway. Fred Decker, the only expert valuation witness called by servient owner, testified the value of servient owner's property on *April 15, 1979,* before establishment of the road, was $202,550.00. The value after the establishment of the road was $137,550.00. Servient owner was, therefore, damaged in the sum, of $65,-000.00. After servient owner had rested his case and landlocked owners had begun to put on evidence in their case, landlocked owners moved to exclude the valuation testimony of Fred Decker. The trial court refused. Landlocked owners now claim reversible error but cite no cases nor present any valid reasons why such refusal was error. We find no reversible error in such refusal.

Landlocked owners next complain of the court's refusal to withdraw, by instruction, the jury's consideration of the cost of erecting fences. The commissioners determined the locations of the proposed roadway made erection of fences unnecessary under § 228.370 and the court approved the commissioner's report. Landlocked owners contend this precluded the jury from considering the cost of erecting fences but cite no cases. We hold the commissioners report relating to fences had no bearing whatsoever on damages sustained by servient owner.

Finally, landlocked owner questions the court's refusal to withdraw from the jury's consideration, the unsightliness of the roadway as an element of the damages. The jury was properly instructed as to damages. The giving of withdrawal instructions is largely within the wide discretion of the trial court. We find no abuse of such discretion. *Helming v. Adams,* 509 S.W.2d 159, 169 (Mo.App.1974); *Sampson v. Missouri Pacific R. Co.,* 560 S.W.2d 573, 584 (Mo. banc 1978).

Judgment affirmed.

REINHARD and SNYDER, JJ., concur.