**Paul C. DANIELS and Iva J. Daniels, Respondents,**

v.

**A.B. RICHARDSON and Willa Richardson, Appellants.**

**No. WD 39549.**

Missouri Court of Appeals, Western District.

Aug. 9, 1988.

See also, 665 S.W.2d 76.

Patrick E. Richardson, Gifford and Richardson, P.C., Green City, for appellants.

Clifford B. Mayberry, Mayberry and Mayberry, Kirksville, for respondents.

Before NUGENT, P.J., and CLARK and COVINGTON, JJ.

CLARK, Judge.

This is a suit by respondents to establish a private road as a way of strict necessity across the lands of the several original defendants to provide access to respondents' landlocked property. The appellants, who were the only defendants in the suit who did not default, appeal the judgment granting the private road and awarding damages. The judgment is reversed.

Respondents' petition alleged their ownership of a tract of land in Putnam County entirely surrounded by lands owned by others and not accessible by public road. The lack of access was not a contested fact. An abandoned railroad right-of-way runs across appellants' tract and extends in a northwesterly direction, eventually reaching a Putnam County public road. The petition proposed that a private road be established for respondents' use, twenty feet in width, over the abandoned right-of-way. The trial court found the allegations of the petition to be true and appointed commissioners to mark out the road.

The three commissioners subsequently made their report. The site for the private road was designated in the report as a strip of land twenty feet in width along the centerline of the abandoned right-of-way beginning at a point designated by reference to a quarter section corner, assumed to be at the juncture of the former right-of-way and the Putnam County Road, and extending southeasterly 0.65 miles to a point on respondents' property. The report also identified four cross-road drainage points and recommended that tract of 100 feet in width and 80 feet in length be established at each of these points to maintain drainage structures.

Appellants filed objections to the commissioners' report and requested a jury trial on the issue of damages recoverable for the portion of appellants' lands taken to create the road. The trial court overruled the objections to the report. A jury awarded appellants $1800.00 as damages and this appeal followed.

■ In their first point, appellants contend the trial court erred when it did not initially conduct a hearing and make a specific judicial determination as to where the road should be located. The judgment merely adopted the allegations of respondents' petition and left it to the commissioners to determine the boundaries.

It is true, as appellants contend, that the issue of the general location of a roadway sought on petition for a way of necessity is for the court. *Merrick v. Lensing*, 622 S.W.2d 260, 263 (Mo.App.1981). In this case, however, no issue over the general location of the road was presented. All the testimony taken at the hearing referred to the location of the former right-of-way. Appellants presented no evidence suggesting that the location proposed in respondents' petition was not feasible and they offered no alternate to the suggested route. Indeed, appellants' attorney affirmatively stated that the only purpose for the hearing was to determine whether the property was landlocked and, if it was, the commissioners would determine the site of a proposed private road.

Under these circumstances, with only the location proposed in the respondents' petition as the suggested site, the court did not err in entering its initial finding referable to the petition. As noted later in this opinion, however, other factors may affect the determination of where the road should be located.

■ Appellants next assert that the commissioners' report was statutorily deficient

in several respects. They first complain that the report and the judgment incorporating the terms of the report failed to set out an adequate description of the private road. The judgment identifying the land as in Putnam County, Missouri, reads:

Petitioners are hereby awarded a private road leading from petitioners' property described as follows, [description of respondents' lands omitted] to the public road over and above [sic] the abandoned railroad right-of-way of the Burlington Northern Railroad Company and more particularly described as a strip of land 20 feet in width over and upon the abandoned right-of-way of the Burlington and Northern Railroad Company being previously the Iowa and St. Louis Railway Company as described in Exhibit B, a copy of which is attached hereto and incorporated herein by reference. Said strip of land shall be located along the center line of said abandoned railroad and may be further described as follows:

Beginning at a point 545 feet, more or less, East of the Northwest corner of the Southwest Quarter of Section 27, Township 65, Range 16, thence in a Southeasterly direction and along the center line of said abandoned railroad a distance of 0.65 miles more or less to a point on Petitioners North property line (see Exhibit B) and 130 feet, more or less, East of the Southwest corner of the Southeast Quarter of said Section 27. All in Putnam County, Missouri.

Under § 228.370, RSMo 1986,[1] the commissioners in a private condemnation proceeding are to "mark out" the road and in their report to state the beginning and ending, courses, distances and width of the proposed road. The term, mark out, means to locate and the commissioners' report in this respect should be precise. *State ex rel. Palmer v. Elliff,* 332 Mo. 229, 233, 58 S.W.2d 283, 285 (1933), overruled on other grounds, *City of St. Louis v. Butler,* 358 Mo. 1221, 219 S.W.2d 372 (banc 1949).

The description quoted above relies on an "Exhibit B" which, by reference to the commissioner's report, is found to be the respondents' petition. The final paragraph of the petition contains a description purporting to be that of the former railroad right-of-way. The fact of where the right-of-way was located was never established by any evidence and, thus, the accuracy of respondents' petition statement is unverified. Despite this, however, the location is in doubt because the point of beginning in the description uses the term, "545 feet more or less." The beginning point for the road therefore may not be located with precision.

The description is also confusing because the course and distance description, although purporting to set out a description of the strip of land, actually describes only a line, the center line of the right-of-way.

It is possible to locate the proposed road from the language in the judgment in a general way, but not with precision. There is neither reason nor excuse to leave this issue for future controversy when the means are undoubtedly at hand to prepare a description of the twenty foot strip and do so without reference to external documents or exhibits incorporated by reference. Because other errors require reversal of the judgment and remand, the deficiency in the description of the road should be corrected in a subsequent judgment, wherever it is determined that the road should be situated.

■ We reject appellants' contention that an adequate legal description of the road in the judgment must be supplemented by a survey and physical location of the roadway boundaries on the ground. It is enough if the description in the commissioners' report and in the judgment provide a precise location which may later be used by a survey if necessary. The description as contained in the judgment constitutes the final adjudication of the issue which would be unaffected by the result of a survey.

■ Appellants next take exception to the portions of the commissioners' report,

1. All statutory references are to RSMo 1986.

and the judgment, which set aside 100 foot areas at four locations along the road for maintenance of drainage structures. They point to § 228.370 which provides, in part, "[T]he commissioners shall view the premises and shall cause a road, not exceeding forty feet wide, to be marked out...." Appellants contend the court exceeded its authority in appropriating more of appellants' land than the statute authorized. Respondents argue that the commissioners found in their report that if the drainage structures were not maintained, the road would soon become impassable and without rights to maintain the drains, the roadway would be of no value for ingress and egress.

As this court observed in *King v. Jack Cooper Transport Co.*, 708 S.W.2d 194, 197 (Mo.App.1986), proceedings to acquire a private way over the lands of another are in invitum, that is against one not assenting, they are against the common law and common rights, and statutes authorizing such proceedings must be strictly construed. Section 228.370 explicitly limits the area taken in a proceeding for private condemnation to a width of forty feet. There is no tolerance or latitude permitted. The court erred in approving the commissioners' report appropriating lands in excess of forty feet. If the route selected cannot be maintained as a road without taking additional land beyond forty feet, the court should have conducted further proceedings to select a more feasible location.

■ In their next point, appellants take issue with the judgment and with the commissioners' report in the matters of apportionment of damages and in provisions regarding fences. They note that although the property of several landowners was taken, there was no individual assessment of damages, only one lump sum award. Also, the report indicated that the proposed road would cross two property line fences, but it made no provisions to re-establish the fences nor did it consider payment of that expense.

Again referring to § 228.370, the relevant portion states: "[T]he commissioners ... shall also make and report an assessment of the items of damages sustained by each person through whose land said proposed road passes, including the erection of fences and the kind of fences to be erected...." The report in this case indicates that the commissioners failed to discharge the duties imposed on them by the statute in that they made no itemization of damages and said nothing about erection of fences or that fences were not necessary. A commissioners' report with similar deficiencies was criticized in *Reid v. Jones*, 594 S.W.2d 339 (Mo.App.1980), and found inadequate for entry of judgment.

Finally, appellants contend the trial court erred in permitting witness Curtis Torrey to testify as to his opinion of the damages which resulted from the taking of the private road. Torrey was one of the commissioners who had been appointed in the case and who had joined in the report setting the amount of damages. Torrey testified that he owned farmland on the opposite side of Putnam County from the subject tract and when asked whether he knew about other real estate, he replied, "just town property" but supposed he was as familiar with farm values as anybody except maybe "a real estate man." His only familiarity with appellants' land was the result of his visit with the other commissioners. He further acknowledged that his estimate of damages took no account of any reduction in value of the remainder of appellants' farm nor did it take into consideration the expense for erecting fences.

■ There is no exact rule for determining the competency of a witness to testify regarding the value of land subject to condemnation. *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 23 (Mo.App.1964). As a general rule, market value of real estate is established by voluntary sales of other similar property made in the same general vicinity, not too remote in time, and consequently, the witness should have some knowledge of sales of comparable property. *Id.* at 23–24. The tendency is to admit any evidence which sheds light on the question, leaving it to the discretion of the trial court to keep it within bounds. *State ex rel.*

**60**

*State Highway Commission v. Reynolds,* 530 S.W.2d 34, 37 (Mo.App.1975). If the witness knows or has inspected the property and if he has such information, knowledge and skill which would enable him to form an intelligent judgment and if this knowledge is superior to that of the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification. *Bloomfield Tractor Sales,* 381 S.W.2d at 24.

■ Witness Torrey should not have been permitted to testify regarding damages in this case. He was not shown to have any knowledge of comparable sales, any familiarity with real estate values for similar properties or any experience in buying and selling real estate. He had no greater knowledge on the subject of value than an ordinary juror.

The several errors in the case identified in this opinion require that the judgment be reversed and the cause remanded. There remains the question of what proceedings be undertaken. The problem with the four drainage areas suggests that the most feasible location for the road may not be the abandoned right-of-way and that the trial court must conduct a new hearing to establish where the general location of the road should be. Thereafter, commissioners should be appointed, or reappointed, with consideration given to the provisions of § 228.390.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.